[Civ. No. 4975.   Third Appellate District.—August 28, 1933.]

FOREST LAWN MEMORIAL PARK ASSOCIATION, INC. (a Corporation), Petitioner, v. STATE BOARD OF EMBALMERS AND FUNERAL DIRECTORS OF THE STATE OF CALIFORNIA et al., Respondents.

John L. McNab, Call & Murphey, H. R. Snyder, Glenn Whitney and Harold Morrison for Petitioner.

Frank J. Barry, W. L. Pollard and Albert E. Sheets for Respondents.

PULLEN, P. J.—Petitioner herein, Forest Lawn Memorial Park Association, Inc., a corporation, seeks by this writ of mandate, to compel respondents, State Board of Embalmers and Funeral Directors, to issue to petitioner a license to conduct the business of funeral director in the state of California, as provided in an act entitled Funeral Directors and Embalmers Act, chapter 140, Statutes 1929.

Petitioner was empowered by its articles of incorporation, among other things, to engage in, conduct and deal generally with and in everything pertaining to the preparation of bodies for burial, including the owning, operation and management of mortuaries and to do all things necessary or incidental to the preservation, burial or cremation of bodies of deceased persons. In accordance with such corporate powers petitioner presented and filed with respondent board

upon an approved form, a written application for a funeral director's license to be issued to Mr. M. Newton Howell, the duly elected, qualified and acting president of petitioner. Accompanying this petition were the plans of a building then under construction situated in the group of administrative offices of Forest Lawn and designated 1716 South Glendale Avenue, Glendale, California. This building has now been completed and is ready for occupancy by petitioner, where it proposes to carry on its business as a funeral directing establishment, and includes a chapel, preparation rooms and display rooms.

An objection or protest was filed with the State Board of Embalmers and Funeral Directors to the granting of this petition and the matter was set for hearing, and after a hearing thereon respondent took the application and the objections thereto under advisement and in due time the petition was denied and the matter now comes before us on an application for a writ of mandate.

From the order of the board it appears that the refusal to grant the application was based upon two grounds:

First, that petitioner's proposed place of business would not be conducted at a specific street address or location, or devoted exclusively to the care and preparation for burial or transportation of human dead bodies, and

Secondly, that petitioner's proposed funeral directing establishment was situated upon land dedicated for cemetery purposes as defined in the General Cemetery Act (chap. 1148, Stats. 1931), and therefore petitioner could not conduct an "established business" thereon, as such term is defined by the Funeral Directors and Embalmers Act.

No objection was found by the board to the applicant's corporate capacity, the qualifications of its president, the character of its officers, directors or members or the form or substance of its application for a license; neither was objection found with applicant's mortuary establishment.

Petitioner alleges that the action of the respondent in refusing its application was arbitrary and capricious, not in conformity with or supported by the facts established at the hearing thereon, is contrary to the provision of the Funeral Directors and Embalmers Act in California, and is in violation of the right of petitioner under said act to conduct and carry on said business and is in excess of its jurisdiction.

■ Respondent found that petitioner's proposed place of business would not be conducted at a specific street address or location as required by the provisions of section 3 of the statute which defines a "funeral director" as a person, partnership, corporation, association or other organization engaged in or conducting *as an established business*, the business of preparing for burial dead human bodies, etc., and then defines an "established business" to mean a place of business conducted at a specific street address or location devoted exclusively to the care and preparation for burial or transportation of human dead bodies, etc.

It is held by the board that this requirement as to a specific street address or location is not fulfilled because the proposed mortuary is located approximately 500 feet from a public thoroughfare on lands controlled by applicant within the confines of a cemetery, and that the place of business is not accessible to the public as the cemetery is inclosed by a high wall and the entrance thereto is by gates which are and may be closed to the general public at certain hours of the day or night as applicant may determine, and the claim that the business has a specific street address is not obviated by numbering the building wherein the proposed funeral directing business of applicant is to be conducted as 1716 South Glendale Avenue for the reason that the building is not situated on South Glendale Avenue, but approximately 500 feet therefrom. As to these findings of respondent board we do not find support in the record nor in the act itself.

The engineering department of the city of Glendale in the usual course of its duties fixed and assigned to said mortuary building the street number 1716 South Glendale Avenue. The record discloses that the building in question is approximately 300 feet from the property line of Glendale Avenue, that it is directly opposite the entrance, and the space between the building and the entrance is open and drives and walks lead directly from the entrance to the mortuary building. This building is a large and imposing structure separate and distinct from any other building in the group, with at least five entrances, all opening on to the driveway directly leading to the entrance.

An inspection record by an employee of the board on file also recites that floodlights were being installed to light the

area between the building and Glendale Avenue, and the particular section occupied by the mortuary building and the driveway to the entrance thereof is to be separate from the cemetery ground at night and the entrance gates will remain open twenty-four hours a day. Even if this arrangement were not proposed we would not be inclined to attach great importance to the fact that the proposed mortuary building was not immediately fronting upon the avenue. It is a matter of common knowledge that many mortuaries are set back from the property line at various distances; that some are even inclosed by iron or masonry walls. The argument of respondent would lead one to assume that even the front doors of a mortuary must remain open and unlocked throughout the twenty-four hours. Neither is it necessary in order to have a designated street number that a building must be abutting upon the street. The purpose of the statute was undoubtedly to prevent the issuance of a blanket license to transact such business of a funeral director, to have said business conducted at a fixed and designated place or establishment where it could be found by officers and inspectors of the board, and where individuals having business to transact, could by the use of ordinary intelligence, find the mortuary. Even conceding, however, that the mortuary has no specific street address, it cannot be claimed that it is not at a specific location, the statute requiring either a specific street address or a specific location. Surely the location is specific and the business will be carried on at a fixed place or establishment.

■ Objection is also made by respondent that petitioner's proposed place of business neither is nor will be devoted exclusively to the care and preparation for burial and transportation of human dead bodies.

This construction is based not upon the fact that within the building or structure itself other businesses will be carried on, but rather that the land upon which the mortuary is located had been dedicated exclusively for a cemetery and cemetery purposes and therefore it would be impossible to devote the building exclusively for the care of human dead bodies. The error in this reasoning is that the dedication is of the area known as Forest Lawn Memorial Park, while the exclusive feature as required by the act refers to and is confined to that much smaller area within the structural

walls of the mortuary itself. It is probably true that within the cemetery area are offices where the business of the cemetery association is conducted, and where sales of graves, crypts, urns, flowers, statuary, etc., are dealt in, but all such activities are carried on without the building proposed as a mortuary and are not of concern to the present issue.

A second ground urged for the denial of the application is that the proposed funeral establishment is situated upon land dedicated to cemetery purposes under the General Cemetery Act, and therefore the structure cannot legally be used as a mortuary. We do not believe this objection is justifiable nor is it a matter within the cognizance of respondent and does not furnish a legal reason for denying the application.

It is a well-established rule of law that a board has no powers other than those granted in the statute creating it and hence cannot deny a license to an applicant who has complied with the statute for any reason not set forth therein. Under our Constitution the question of what would constitute cemetery purposes vests not in this board, but is a question that must be determined by a judicial body.

The Board of Embalmers and Funeral Directors here is interested only with the mortuary building and its fixed requirements and is not concerned with the duty of enforcing the Cemetery Act, or has it judicial powers to determine what use may be made of property dedicated for cemetery purposes, nor to deny an application for a mortuary because it is located on land dedicated for cemetery purposes. For the board to assume such responsibilities would necessitate it passing upon title to property, covenants and restrictions in deeds, zones and zoning ordinances, contracts and defeasances, and other questions too numerous to conjecture. Such an inquiry would be unwarranted and an exercise of a judicial function not granted by law.

Petitioner argues with considerable force that the establishment of a mortuary in a cemetery is not only consistent with the purposes for which the land was dedicated, but is expressly authorized by the Cemetery Act itself.

Under the provisions of section 2 of the General Cemetery Act of 1931, cemetery business and cemetery purposes "shall mean any and all business and purposes requisite or necessary for or incidental to the establishing, maintaining, man-

aging, operating, improving and conducting a cemetery and the interring of the human dead and the care, preservation and embellishment of cemetery property''.

Petitioner reads the section as follows:

''Cemetery business . . . shall mean any and all business and purposes . . . incidental to the . . . conducting a cemetary and the interring of the human dead . . . ''

While we are not prepared to follow counsel to the full limit of his contention, it does appear a judicial question of importance is raised, and were it necessary for the determination of the issues here presented that question would receive serious consideration.

We believe the location and arrangement of the mortuary in question fully complies with the statute, has both a specific street address and a specific location and as far as appears from the record will be used exclusively for the care and burial or transportation of the human dead.

■ Petitioner also questions the constitutionality of the entire Funeral Directors and Embalmers Act as being violative of section 21 of article I of the state Constitution and denies to petitioner the equal protection of the laws as guaranteed by the fourteenth amendment of the Constitution of the United States. Under the provisions of section 9 of the statute every funeral director engaged in or conducting business as a funeral director at a fixed place or establishment on the effective date of the act, who should register on or before September 1, 1929 (the act becoming a law August 14, 1929), became entitled to receive and did receive a license regardless of the location of his or its place of business and regardless of whether it was devoted exclusively to the purposes specified in section 3 of the act, whereas by the provisions of sections 3 and 7 thereof before petitioner can engage in the same business as those under section 9 or obtain a license as funeral director, it must conform strictly to the requirements of those sections and in addition must have as its president or corresponding officer, a licensed embalmer.

This contention has been similarly urged on other occasions and the contention has been rejected. Without reviewing in detail the particular cases reference is hereby made to *Ex parte Whitley,* 144 Cal. 167 [77 Pac. 879, 1 Ann. Cas. 13], where the court in passing upon the con-

stitutionality of the Dental Law held such a provision was not unconstitutional as conferring special privileges and immunities upon certain practitioners, upon the theory probably that the fact they had been engaged in the practice of this calling within the state was sufficient evidence of their proficiency in their profession or business. A somewhat similar question has been decided in regard to the exercise of the police power in regulation of business under the Zoning Law. In *Jones* v. *City of Los Angeles,* 211 Cal. 308 [295 Pac. 14, 18], this question is discussed in some detail as follows:

"In response to the charge that exemption of existing nonconforming uses would be discriminatory, the courts have very generally held the exemption to be valid and necessary. As the court said in *City of Aurora* v. *Burns,* 319 Ill. 84 [147 N. E. 784, 788] : 'The building ordinance . . . permits lawful use of the building at the time of the passage of the ordinance, although not in conformity with its provisions, to continue thereafter. This exemption is made so that the ordinance shall not have a retroactive operation. It would be manifestly unjust to deprive the owner of property of the use to which it was lawfully devoted when the ordinance becomes effective.' In *Spector* v. *Building Inspector,* 250 Mass. 63 [145 N. E. 265, 268], the same conclusion is reached: 'To exempt buildings already devoted to a use from a prohibition of such use of area is not unequal but unlawful.' This court has also spoken to the same effect in *Zahn* v. *Board of Public Works,* 195 Cal. 497, at 512 [234 Pac. 388, 394] : 'As to the objection that the ordinance was not retroactive but permitted the continuance of existing uses, it will suffice to say that for the purposes of zoning it is not necessary that existing uses shall be removed.' . . . See, also, *A. C. Blumenthal & Co., Inc.,* v. *Cryer,* 71 Cal. App. 668 [236 Pac. 216]."

There can be no question but what the provisions in the act now under consideration applied to all alike and are valid exercises of police power.

Petitioner also contends that it has heretofore changed its original dedication of certain property lying within the original confines of Forest Lawn Memorial Park by eliminating from the area dedicated to burial purposes the lands upon which the mortuary is erected, but the conclusions we

have reached on other points make it unnecessary to pass upon this, as well as certain other points urged by petitioner in its brief.

We believe enough has been said, however, to make clear the views of this court on the material issues presented, and for the reasons given respondent board is hereby directed to grant and issue to petitioner a funeral director's license as prayed for in its petition.

Plummer, J., and Thompson, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 26, 1933.