## Ted's Union Inn's License

*George H. McWherter,* for appellants.

*Albert C. Snively,* for Pennsylvania Liquor Control Board.

LAIRD, J., July 14, 1939.—Appellants on March 30, 1939, filed with the Pennsylvania Liquor Control Board an application for a retail restaurant liquor license for the license year ending April 30, 1940, for an existing restaurant operated by appellants, located at 113B Grant Avenue, Vandergrift, Pa.

On March 31, 1939, the Pennsylvania Liquor Control Board refused to grant the license applied for by appel-

lants, and set forth as the sole and specific reason for such refusal the following: "There is a restriction in the deed to the property prohibiting the sale of liquor."

Counsel for the Pennsylvania Liquor Control Board and counsel for appellants, by stipulation, agreed that the sole question before the court, presented by this appeal, was the construction of an alleged restriction in a deed from the Apollo Iron and Steel Company to the Vandergrift Land and Improvement Company, dated June 12, 1896, and recorded in the Recorder's Office of Westmoreland County, Pa., in Deed Book Vol. 253, p. 1, which restriction in said deed reads as follows:

"Under and subject to the reservation herein above mentioned and also under and subject to the following restriction and covenant, and the said party of the second part for itself, its successors and assigns, does hereby covenant, grant, agree with and unto the party of the first part, its successors and assigns that no vinous, malt, brewed, fermented or distilled liquors or intoxicating drinks of any kind shall be manufactured, sold, or offered for sale on the tract of land hereby conveyed, or upon any point thereof, for the full term of 99 years from the date hereof."

No testimony was taken, but counsel for the Pennsylvania Liquor Control Board and counsel for appellants further stipulated as follows:

"Now, April 21, 1939, it is stipulated and agreed by and between counsel for the petitioners and counsel for the Pennsylvania Liquor Control Board that John Urban, a citizen of Vandergrift Borough, if called as a witness would testify as follows:

"1. That he has been a resident of the Borough of Vandergrift for approximately forty years.

"2. That for over five years the Pennsylvania Liquor Control Board has conducted a retail liquor store in the Borough of Vandergrift within the alleged restricted area, the same being now located at 131 Columbia Avenue, Vandergrift, Pa.

"3. That within the alleged restricted area in the Borough of Vandergrift approximately eighty establishments have, until very recently, been dispensing intoxicating liquors in the Borough of Vandergrift, most of them over a period of five years without a license of any character, and that within said restricted area during a period of approximately fifteen years prior to January 1934, intoxicating liquors were dispensed on a commercial basis by between two and three dozen establishments, and throughout said periods there has been no attempt to enforce the alleged restriction by the Apollo Iron and Steel Company, the Carnegie-Illinois Steel Company, or by any lot owner holding under the Vandergrift Land and Improvement Company asserting any rights which he might have under said alleged restriction, by bill in equity or other civil remedy.

"4. That the Apollo Iron and Steel Company, the grantor in the deed containing the alleged restriction, is no longer a party at interest and is no longer in business, said company having been dissolved and consolidated and merged with the Carnegie-Illinois Steel Company.

"5. That no protests were filed against the granting of the license requested with the Pennsylvania Liquor Control Board by any individual, copartnership, or corporation."

Upon the record, the Pennsylvania Liquor Control Board based its refusal on no other ground than the restriction contained in the deed. The question therefore presented to the court is whether the Liquor Control Board was justified in refusing the license applied for on the ground of the alleged restriction and whether this court should sustain or reverse the action of the Liquor Control Board, in view of the record presented and in the light of the stipulation.

This court has heretofore been called upon to pass upon this same deed restriction in two cases, namely, Raschiatore's Appeal, 23 D. & C. 315, in which Judge Copeland

sustained the board in refusing the license, and in Cheris' Liquor License Case, 127 Pa. Superior Ct. 355, in which the refusal of the license was sustained. In neither of these cases were the questions raised which have been presented to the court in the instant case. In the Cheris case, the chief argument of counsel for appellant was that of estoppel. The Superior Court there held that its duty was limited to the inspection of the record to ascertain whether the court below exceeded its jurisdiction. ". . . and our duty is limited to an inspection of the record to ascertain whether the court below exceeded its jurisdiction or its proper legal discretion." (p. 357)

The Superior Court sustained Judge Copeland in the Cheris case on the theory that the court of quarter sessions had jurisdiction and that he had not abused his discretion.

In the instant case, counsel for appellants has presented questions which neither Judge Copeland nor the Superior Court passed upon in the two Vandergrift cases just referred to. The grounds and the reasons advanced why the Pennsylvania Liquor Control Board should be reversed, strenuously argued by counsel for appellants, are as follows:

"1. The Pennsylvania Liquor Control Board under the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, has no power to refuse a license by reason of an alleged restriction contained in a deed.

"2. That under section 403 of said act, it is mandatory upon said board to grant a retail liquor license to a hotel or restaurant if the applicant conforms with the requirements of said section (the conformity with said requirements was not disputed in this case), the mandatory verb shall being used in said section 403 excepting in the case of a club where the board may exercise its discretion.

"3. The Pennsylvania Liquor Control Board is an administrative and not a judicial body and has no power to determine the title to land, which it must necessarily do in passing upon an alleged restriction in a deed.

"4. A court of equity is the sole tribunal that can pass upon the validity of a deed restriction of this character, including such questions as whether the same has been waived, whether the same has been abandoned, whether the proper parties are before the court to bring the action, whether conditions have so changed as to render the alleged restriction inoperative, and finally to determine whether there was any validity to the alleged restriction in the first place.

"5. The court of quarter sessions is not the proper court in which to try a question of title to the land, and, the applicants having conformed with the requirements of section 403 of the Pennsylvania Liquor Control Act, it is powerless to do anything but direct the granting of the license.

"6. The Liquor Control Board, having for five years operated a retail liquor store in the Borough of Vandergrift within the restricted area, cannot thus pass favorably on its own store and not give the same interpretation of the law to a citizen of the town of Vandergrift who applies for license, such as these applicants.

"7. No bill in equity has been brought by the Apollo Iron and Steel Company, the grantor in the deed, or by any lot owner within the alleged restricted area, to restrain the sale of liquor in the alleged restricted area, although the evidence shows that until quite recently approximately eighty establishments were selling intoxicating liquors in the alleged restricted area, most of them for a period of five years, and that for a period of approximately fifteen years prior to January 1934, intoxicating liquors were dispensed on a commercial basis by two to three dozen establishments within said alleged restricted area. These facts would indicate an abandonment by the lot owners of the alleged liquor restriction, and a waiver of any rights which they may have. Such lot owners and the grantor in the deed could in a court of equity be charged with laches under these circumstances.

"8. According to the evidence before the court, the Apollo Iron and Steel Company, for whose benefit the alleged restriction and covenant against liquor was presumably inserted in the deed, has been dissolved, has no further interest in the matter, and it is impossible for it as grantor in said deed to appear in equity, or any other court, and oppose the granting of license.

"9. The Liquor Control Board was without justification on its own initiative to refuse applicants a liquor license by reason of the alleged restriction when neither the grantor, the Apollo Iron and Steel Company, its successor, or any lot owner in the alleged restricted area, appeared before said board and objected to or protested against said license.

"10. The deed in question, after granting title in fee simple from the Apollo Iron and Steel Company to the Vandergrift Land and Improvement Company, sets forth certain exceptions and reservations which are admittedly valid and enforcible. The restriction as to the sale of liquor is not by way of exception or reservation but is contained in the habendum clause in the deed. Having first granted a fee simple title and the alleged restriction contained in the habendum being repugnant to the estate set forth in the premises or granting clause of the deed the habendum clause falls by reason of repugnance, is inoperative, unenforcible, void, and of no effect."

The position assumed by appellants with respect to a number of these propositions has been adopted in recent appeals of this character by the courts of quarter sessions of a number of other counties. President Judge William G. Thomas of Carbon County, at no. 49 June sessions, 1938, In re Appeal of Andrew Susanin, in a case involving a liquor restriction contained in a deed, in handing down a decision reversing the Liquor Control Board, in part, said as follows:

"While the granting of liquor licenses was under the Brooks License Law, a question of a similar restriction in

a deed came up before the court as an objection, and the court refused to hear any such objection for the reason that the court of quarter sessions could not pass on title.

"It does not appear to the court that the Liquor Control Board has been established as a separate court to pass on title to property. The court finds that there is nothing in the act of assembly granting the power to the Liquor Control Board to refuse the renewal of a license on the question of a restriction in the chain of title prohibiting the sale of intoxicating liquor.

"Questions of this character are either brought in the equity court or in an action of ejectment (see Lehigh Coal & Navigation Co. v. Early, 162 Pa. 338).

"No man should be condemned unheard, punished, or deprived of his property, or any right thereof, without due hearing. As there has been a stipulation that no objections or protests have been made by any party who may have a deed in said borough and might be somewhat aggrieved by reason of the liquor license being on the premises applied for, the appellant may raise the question of estoppel if the case were tried in the proper court.

"It further appears to this court that in this county the Liquor Control Board has established two State liquor stores on lots of ground with a similar restriction in the deed, and, regardless of the restriction in said deeds, they sell their wares constituting intoxicating liquors to the public. It appears illogical to the court that the Liquor Control Board, representing the government, would pass favorably on its own store and would not give the same interpretation of the law to the subjects of the government. 'Like reason maketh like law'. There is only one law, and the same holds for the government as for its subjects, and, when the Liquor Control Board, as agent of the government, favors the government under similar facts and refuses the government's subjects an equal right, there are two interpretations of the law by the

board, one favoring the government, and, in effect, themselves, and the other against its subjects.

"It is a fundamental rule in the administration of justice, that a person cannot be judge in a cause wherein he is interested; nemo sibi esse judex vel suis jus dicere debet; and, therefore, in the reign of James I, it was solemnly adjudged that the king cannot take any cause, whether civil or criminal, out of any of his courts, and give judgment upon it himself; but it must be determined and adjudged in some court of justice according to the law and custom of England.

"The court holds that the Liquor Control Board has no jurisdiction in the matter of title, and there is nothing in the act of assembly which gives them such powers. The old maxim that "The King can do no wrong" is subject to so many exceptions that, although this bureau is an agency for the government, it has exceeded its authority in passing on the question of title and refusing this license, and, as the question of the renewal of the license takes place on the 1st of August, the court finds it necessary to make an order forthwith."

By stipulation, it has been called to the attention of the court that the Pennsylvania Liquor Control Board has operated a retail liquor store in the Borough of Vandergrift within the restricted area since November 15, 1935. Under the reasoning set forth by the learned President Judge of Carbon County it seems unreasonable for the Liquor Control Board to refuse to a citizen living in the restricted area a privilege which it accords to itself. This reasoning is particularly sound in view of the fact that neither the grantor in the deed nor any lot owner has asserted his rights in a court of equity.

The Liquor Control Board may justify its action in setting up a State liquor store for the sale of liquor within the restricted area on the theory that the State is not a person: Baker et al. v. Kirschnek et al., 317 Pa. 225; but we note that the word "person" is not used in the restricting clause contained in the habendum of the deed

in question. We realize that " 'the law is prima facie presumed to be made for subjects only' "; that " 'the general business of the legislative powers is to establish laws for individuals, not for the sovereign' ", and that " 'the Crown is not reached except by express words, or by necessary implication, in any case where it would be ousted of an existing prerogative or interest' ", and while it is not our intention to criticize Baker et al. v. Kirschnek et al., supra, nor to disagree with the law therein expressed, or as enunciated in Raschiatore's Appeal, supra, Cheris' Liquor License Case, supra, McGettigan's Liquor License Case, 131 Superior Ct. 280, or any of the other cases cited by the Liquor Control Board, we do not believe that the Commonwealth by virtue of its sovereign power should arbitrarily set aside a covenant between its citizens, to its own gain or profit, and engage in the sale of liquor in violation of that covenant, and at the same time seek to enforce the covenant by refusing a law-abiding citizen of good character and reputation a license to dispense liquor where he has complied with the act of assembly.

Has the Commonwealth itself, in selling liquor in Vandergrift since November 15, 1935, not waived any right it may have to enforce the covenant in the deed? Has the Liquor Control Board, in maintaining a State liquor store in Vandergrift, where for the past 3½ years "vinous . . . or distilled liquors" are "sold or offered for sale" not abandoned any right it may have to enforce the restriction in the deed against the citizens of Vandergrift?

Be that as it may, the Liquor Control Board is not an owner of real estate in Vandergrift, and is not a party to the covenant or restriction in the deed.

"The enforcement of restrictions against the sale of malt or brewed beverages is a matter entirely without the jurisdiction of the Pennsylvania Liquor Control Board. The board has no more right to deny the issuance of a renewal license because of supposed restrictions than it would have to proceed by bill in equity against the appellant for having supposedly violated such restriction. The

board could not maintain such a bill. That is entirely a private matter between the appellant and the persons, if any, who deemed their rights affected by a violation of a supposed covenant": In re John Wesley Cross Post No. 507, American Legion No. W-I, June sessions, 1938, Q. S. of Delaware County.

"We are of the opinion, that as to appellant's property, the restrictive covenant, as to the sale of liquor, has been wholly abandoned by those who could have at one time protested. The fact that the Liquor Control Board has granted appellant a license for an equally restricted property as well as three licenses in the immediate vicinity; the fact that the State conducts a liquor store across the street . . . all show that the restriction against the sale of liquor in the immediate neighborhood of appellant's restaurant has been wholly abandoned": Johnson's License, 34 D. & C. 205, 208 (Knight, P. J.).

In the Delaware County case of John Wesley Cross Post No. 507, American Legion No. W-I, supra, quoted with approval by Judge Thomas in the Carbon County case, supra, Judge MacDade ruled on a similar question in the same manner as follows:

"To pass upon the validity of the restriction is in the law and equity courts and not in the Liquor Control Board. The latter's function is to protect health, peace and morals of the people: Ziegler's License, 27 D. & C. 696. . . .

"Restrictions in deeds are usually enforced in a court of equity and in such court the mere fact that a restriction was inserted in a deed is not in itself sufficient to justify a restraining order. Such restrictions usually run against certain land for the benefit of certain other land and do not run against land vaguely for the benefit of the general public or of any administrative or supervising board. A court of equity will restrain a violation of a restriction only if someone having the equitable right to seek such enforcement asks for such relief. Furthermore, even under such circumstances a court of equity will not

always enforce the restriction. In such cases, numerous questions are often involved which require careful consideration. Is the restriction one which in fact runs with the land? Has the party applying for enforcement of the restriction been guilty of such laches that the court should refuse to enforce a restriction because it would be inequitable to do so? Has there been such a change in the character of the neighborhood as to make the restriction obsolete and unenforcible? The decision of these and similar questions is frequently so difficult that a proper treatment of the issues involved may consume a substantial amount of time and require considerable knowledge of real estate law and principles of equity jurisprudence. It would seem, therefore, as though the Pennsylvania Liquor Board is not equipped to pass upon doubtful and disputed cases. It should not, by refusing a license or a renewal thereof, in effect enforce a restriction in cases where a court of equity might refuse to do so."

Has the restrictive covenant in the deed been abandoned?

In a number of Pennsylvania cases called to our attention there was evidence of abandonment. From 1919 to 1933, a number of establishments were selling liquor in the Borough of Vandergrift without license. Between May 1933 and July 10, 1933, the county treasurer granted 18 beer licenses in the Borough of Vandergrift to retail dispensers, clubs, and beer distributors. In 1934, the county treasurer granted 23 such licenses. From the record in the appeal of Frank Raschiatore, supra, we learn that he enjoyed a liquor license from May 16, 1934, until December 31, 1934. As above stated, the Liquor Control Board has operated a liquor store in Vandergrift from November 1935 until the present time. From the evidence, it appears that there is a minimum of as high as 80 establishments which, without license, in the restricted area have been dispensing either beer or whisky in the last six years. Notice was thus given to the holders of

the dominant estate of repeated violations of the restriction contained in the deed.

Throughout this period no lot owner has appeared in a court of law by bill in equity, or otherwise, and asserted his right to have tested the restrictive covenant contained in the deed. That no such person has appeared is strong evidence of abandonment. It appears that none of the lot owners in any of the cases where license was granted, either by the county treasurer or by the Liquor Control Board, or in the instant case, appeared or protested against the granting of such license.

Disregarding the illegal sales of liquor prior to the repeal of prohibition, our attention is called to the fact that over six years have elapsed since the granting on May 13, 1933, of the first beer license in Vandergrift. Sixteen more licenses were granted in Vandergrift by June 2, 1933, and an additional one on July 10th of that year. Thus 17 licensees over six years ago were selling beer in the restricted area. We are not called upon to say and do not wish to be understood as indicating what action we would take or what decision we would make sitting in a court of equity. Nevertheless, we are not unmindful of the fact that one who sleeps on his rights for a period of over six years is ordinarily barred from asserting his rights in a court of equity. There is ample evidence that the lot owners have slept on any rights which they might have under the restrictive covenant. Even now, none of them claims or asserts any such rights. The whole record indicates abandonment.

In Crawford County, President Judge O. Clare Kent, at no. 8, May sessions, 1938, in W. A., Nettie E., and Lillian I. Baird Appeal, reversed the Liquor Control Board and granted two licenses at Cambridge Springs, within an alleged restricted area. He therein cited Cheris' Liquor License Case, 127 Pa. Superior Ct. 355, Benner et al. v. Tacony Athletic Assn. et al., 328 Pa. 577, Judge Copeland's decision in Raschiatore's Appeal, 23 D. & C. 315, and Judge Keller's opinion in the McGettigan Liquor

License Case, supra. He interpreted the latter case as clearly recognizing the relinquishment or entire abandonment of the restriction by the parties interested. In the Crawford County case the surviving heirs of the grantor executed an instrument relinquishing any right and privilege they had by reason of the restriction in the deed for the land in question. On this basis he reversed the board and granted the two licenses, the above case being a test case involving both applications. In the instant case, the grantor, the Apollo Iron & Steel Company, is dissolved and cannot execute a release as was done in the Crawford County case.

Our decision as to abandonment is further supported by the learned opinion of Judge Henry Wilson of Beaver County, at no. 23, June sessions, 1938, in Appeal of Samuel Goodman. We are advised that this was a test case involving approximately 16 applicants from the Borough of Ambridge for liquor license. Judge Wilson said, in part, as follows:

"And in doing so [granting the license] we do not believe we are acting arbitrarily under our plenary powers, but that our position, under the circumstances, is amply supported in law, and that there is no other course open to us.

"Has or has not 'the entire restrictive plan been abandoned'? There are indications that it has been abandoned. The borough council publicly passes a resolution approving the granting of the licenses, and no owner of property has sought to enjoin any licensee. The decisions are uniform that these restrictions are 'in the nature of an easement for the benefit of the holders of other lots in the plan'. The holders of other lots own the dominant estate, and have recourse to equity to enforce their rights. That none have done so is evidence of abandonment. But, aside from that feature, it does not appear to us with sufficient clearness that, as a matter of law, the proper parties are before us, or the issues in the proper court, for us to hold that

the restriction in the deed precludes the granting of the licenses, either by the Liquor Control Board, or by us on appeal. No one is before us except the Liquor Control Board and the applicant, and it can hardly be maintained that the court of quarter sessions can reach out unasked and adjudicate the rights of the holder of an easement who has not appeared, been heard, or sought interposition. No appellate court has so held. Equity is the proper court and procedure to determine the rights and duties existing between dominant and servient estates, and until one or the other so proceeds, neither parties nor subject are before us. If other holders of lots wish their easement enforced they should appear of record in an appropriate action. Until they do, we are of the opinion that the licenses as conditionally granted should be continued until they expire according to the statute, and we will so order."

As under the Brooks Law of May 13, 1887, P. L. 108, in administering the Pennsylvania Liquor Control Act of 1937 the courts of quarter sessions must exercise a sound discretion. In coming to the conclusion we have reached, we have consulted numerous authorities, among which was Raschiatore's Appeal, 23 D. & C. 315, in which Judge Copeland cites and fully quotes from Fanning's License, 23 Pa. Superior Ct. 622:

"Still our opinion is unshaken, and we are convinced that sound discretion under the circumstances dictates no disturbance of existing conditions in Ambridge. And, as we have indicated, if the restrictive plan has not been abandoned, and any holder of a dominant estate is aggrieved, he has his recourse and his remedy."

The same reasoning with respect to the question of abandonment is approved by the Court of Quarter Sessions of Lackawanna County: Appeal of Michael Roman, etc., 39 Lack. Jur. 77, 80, where the court, in granting license, said in part as follows: ". . . the fact that no person immediately affected by the proposed use has, either in the past or now, protested or attempted to

enforce the restriction by legal or equitable means, must be considered as a waiver of the right to enforce the restrictive covenant as to this property. Accordingly, we must sustain the appeal and direct the license to issue."

On the evidence before us we find an abandonment of the restriction by the parties at interest has taken place.

Does the Liquor Control Board have authority to enforce a restriction in a deed simply because such restriction appears in the chain of title?

In Pennsylvania, the interpretation and enforcement of deed restrictions has for many years been solely a matter under the exclusive jurisdiction of our courts of common pleas, sometimes in an action in ejectment, but usually and customarily in a proceeding in equity. The Liquor Control Board is an administrative and not a judicial body. Neither the preamble nor the body of the Act of 1937 makes any reference to or grants any authority to the Liquor Control Board to assume such functions. The Liquor Control Board has not been established as a separate court to pass on title to real estate. We are therefore constrained to hold that the Liquor Control Board exceeds its authority in attempting to enforce this particular deed restriction by refusing license: In re John Wesley Cross Post, American Legion, supra; Appeal of Samuel Goodman, supra; Bairds' Appeal, supra; Appeal of Andrew Susanin, supra; and Appeal of Michael Roman, etc., supra.

Justice Cardozo in A. L. A. Schechter Poultry Corp. et al. v. United States, 295 U. S. 495, 551, stated that the delegation of power to administrative bodies should be "canalized within the banks that keep it from overflowing."

Numerous cases might be cited in support of the principle that an administrative agency may not usurp judicial functions.

In Forest Lawn Memorial Park Assn., Inc., v. State Board of Embalmers & Funeral Directors of the State of

California et al., 134 Cal. App. 73, 24 P.(2d) 887, the matter is accurately stated (p. 78) :

"The Board of Embalmers and Funeral Directors here is interested only with the mortuary building and its fixed requirements and is not concerned with the duty of enforcing the Cemetery Act, nor has it judicial powers to determine what use may be made of property dedicated for cemetery purposes, nor to deny an application for a mortuary because it is located on land dedicated for cemetery purposes. For the board to assume such responsibilities would necessitate it passing upon title to property, covenants and restrictions in deeds, zones and zoning ordinances, contracts and defeasances, and other questions too numerous to conjecture. Such an inquiry would be unwarranted and an exercise of a judicial function not granted by law."

In Munoz et al. v. Porto Rico Railway, Light & Power Co., 74 F.(2d) 816, 820 (1934), the following pertinent remark is made: "To determine the title to land involves judicial powers which the commission does not possess. . . ."

In In re Indianapolis Water Company (Indiana Public Service Commission), P. U. R. A., 1924-B, pp. 306, 314, the following comment appears:

"It is contended by respondents that the company does not have a fee simple title to a part of the canal. This is a judicial question which this Commission does not have the power to determine, being an administrative body and not a judicial body."

This question having been raised, we must decide it. We therefore find that the Pennsylvania Liquor Control Act of 1937, under which the Liquor Control Board is now acting, has not granted to the said board the power to pass on title to property, and in turn that the board was not and is not justified in refusing a license under the circumstances appearing in this case simply because of the fact that a restriction as to the sale of liquor appeared in

the chain of title. Since the restriction is of no force unless asserted by the covenantees, and since no party in interest is before this tribunal to assert a right or make a claim under the terms of the covenant, and since numerous questions would have to be passed upon were the matter of the property presented to us by a party at interest, we in turn must find that in a proceeding of this character the board cannot be sustained in its refusal of the license.

Is the alleged restriction valid or enforcible?

The restriction in question is set forth in the habendum clause in the deed of the Apollo Iron & Steel Company to the Vandergrift Land & Improvement Company, dated June 12, 1896, and recorded in the recorder's office in this county in Deed Book Vol. 253, p. 1. The premises or granting clause conveys a fee simple title to 109 acres of land. This is followed by a clause excepting and reserving certain interests in coal, iron ore, minerals, oil, and gas, and excepting and reserving certain rights of way.

In Pennsylvania it has long been held that where a clause in the habendum of a deed is repugnant to the premises or granting clause, the clause in the habendum falls: Karchner, Exec., v. Hoy, 151 Pa. 383. The first paragraph of the syllabus in that case states the rule very clearly:

"An interest granted by deed, which is so fully, circumstantially and precisely defined and limited in the premises, that there can be no mistake as to the intention of the grantor, will not be defeated by the provisions of a repugnant habendum."

In the above case (Karchner, Exec., v. Hoy), after the description of land, there was a clause which specifically granted to the grantees a life estate unless they had children. The habendum granted them a fee which was an enlargement of the specific provision of the premises. It was held that the habendum, being repugnant to the premises or granting clause, fell, and that the grantees took only a life estate. In the deed in question in the instant

case, the premises or granting clause clearly granted a fee simple title, with certain exceptions and reservations. The habendum is in limitation of the premises or granting clause and repugnant to the clear intent thereof. In a proper proceeding with the proper parties before us it might be held that the habendum must fall in favor of the premises or granting clause, and construed as being null, void, and of no effect, but we do not here decide that question.

In the case of Darrah v. Darrah, 202 Pa. 492, where a father made a deed to his son and in the premises or granting clause a dry trust was created in favor of the children of the grantor's son, the grantee, the habendum contained a clause which apparently enlarged the estate to the grantee and attempted to pass a title in fee simple. It was held that the habendum must yield to the granting clause.

In Salter v. Acker, 62 Pa. Superior Ct. 207, a deed of trust was made to two parties as tenants in common. A recital in the deed, after the granting clause, set forth that the declarant held legal title as trustee for himself and for the other person named in the recital in equal shares as tenants in common, and further covenanted that he would, on request, grant and convey to the other person named an equal half share of the real estate described. It was held that the premise or granting clause prevailed over the recital, and that the real estate was not held as partnership property, although the words "trading as" were used in the recital.

In addition to these principles thus enunciated with respect to such a clause being inserted in the habendum of the deed, appellants contend that the grantee, the Vandergrift Land and Improvement Company, executed the deed as grantee, and that the restriction is a covenant on the part of the grantee, and although signed by it, there was no recital of any resolution by the board of directors or the stockholders of the grantee corporation authorizing

or approving such a covenant binding 109 acres of land for a period of 99 years. This would be a matter of proof if this question were raised in the common pleas side of the court.

As to the legality of the restriction, we do not feel that we, as a court of quarter sessions, should pass upon title to land. The proper parties are not before us; the question has not been raised in the proper manner, and numerous factors would necessarily enter into the determination of such a question requiring the production of evidence. The case can be disposed of without us, as a court of quarter sessions, going out of our province in this proceeding and passing upon a question over which the court of common pleas has sole jurisdiction. However, assuming—but not deciding—that the court of quarter sessions has jurisdiction, this court is convinced that the lot owners have slept on any rights which they might have under the restrictive covenant contained in the deed referred to; and have permitted the violation of such restrictive covenant for so long a time, and to such an extent, as to clearly indicate that the entire restrictive plan has been abandoned; and that any objection to further violation is now barred: Benner et al. v. Tacony Athletic Assn. et al., 328 Pa. 577.

Do the people in the restricted area desire license, or the enforcement of the restriction in the deed?

We have already considered the question of abandonment on the part of the holders of the dominant estate, that is, the lot owners holding title to lots in the restricted area. Our attention in this connection has been called to the expression of opinion on the part of the citizens of the Borough of Vandergrift set forth in various ways.

The electors of the borough were given an opportunity to vote on the question of whether there should, or should not, be license granted in the borough, and they voted in favor of license by a vote of two to one. An ex parte petition has been presented to the court signed by over fifteen hundred persons, each of whom we assume to be a resident

of the Borough of Vandergrift. Resolutions have been passed in favor of the granting of license by the town council, the chamber of commerce, the volunteer fire department, the Steel Workers' Organizing Committee of the United Engineering and Foundry Company, one of the leading employers of the borough, and the Young Democratic Club of Vandergrift. A counter-petition has been presented to the court against the granting of license, signed by a lesser number of persons. Although public opinion in the borough appears to be overwhelmingly in favor of the granting of license, and under the Act of 1887, supra, the court would be under the necessity of taking cognizance of such expressions of public opinion, nevertheless, the court, although appreciating the attempt on the part of the citizens and the various bodies who have seen fit to express their attitude to the court respecting the license question in Vandergrift, is under the necessity of holding as a matter of law, as hereinbefore set forth, that the appeal should be sustained, on purely legal grounds.

And now, to wit, July 14, 1939, after hearing and after argument by counsel, and after due and careful consideration, it is hereby ordered, adjudged, and decreed, all judges concurring, that the appeal be and the same hereby is sustained; that the decision of the Liquor Control Board be and the same hereby is reversed, and the Pennsylvania Liquor Control Board be and it is hereby ordered and directed to grant to applicants, Ted Milanos and Spiros Fatseas, trading as Ted's Union Inn, 113B Grant Avenue, Vandergrift, Pa., the liquor license applied for, for the year ending April 30, 1940, upon receipt of notice of the filing of this decree and a certified copy thereof, and upon the filing of a proper bond and the payment of the license fee, and upon the compliance by applicants with the law and regulations in such cases made and provided; the costs of this proceeding to be borne by appellants.