[Civ. Nos. 19776, 19777.   First Dist., Div. One.   Oct. 4, 1961.]

SUNSET VIEW CEMETERY ASSOCIATION (a Nonprofit Corporation), Respondent, v. R. J. KRAINTZ, as County Building Inspector, Appellant.

(Two Cases.)

John A. Nejedly, District Attorney, and John B. Clausen, Assistant District Attorney, for Appellant.

Francis P. Healey as Amicus Curiae on behalf of Appellant.

Blair F. Burton and Fitzgerald, Abbott & Beardsley for Respondent.

Loeb & Loeb and Herman F. Selvin as Amici Curiae on behalf of Respondent.

TOBRINER, J.—Appellant has appealed from two judgments of the Superior Court of Contra Costa County granting writs of mandate ordering appellant building inspector to issue to respondent cemetery association a building permit for the construction of "an Administration Building, Crematory and Mortuary." Initially appellant claims that the cemetery ordinance of the county "does not permit a mortuary use of property dedicated for cemetery purposes"; and, secondarily, that subsequent to the court's ruling, the county passed a valid emergency ordinance which specifically prohibited the cemetery use. We shall point out why we have concluded that the trial court correctly ruled that the mortuary fell within the scope of "cemetery purposes" and properly condemned as invalid the county's subsequent attempt to defeat the ruling by the adoption of an emergency ordinance prohibiting the establishment of mortuaries in cemeteries.

Respondent, "a non-profit cemetery association organized and existing under the laws of the State of California . . . long prior to 1947 . . . has operated, and is presently in the business of operating a cemetery for the burial of the dead. . . ." On October 20, 1960, respondent applied to appellant, the building inspector of the County of Contra Costa "for a building permit to construct an Administration Building, Crematory and Mortuary" on its property, but appellant informed

respondent that "he would not issue said permit" because under the existing ordinances of the county "cemetery property could only be used for cemetery purposes" and "a mortuary is not a cemetery purpose." Thereupon respondent sought and obtained a writ of mandate directing appellant "to accept . . . [respondent's] application for a building permit and to desist from denying . . . [respondent's] application on the grounds of either Section 8142 or 8317 of the Ordinance Code of the County of Contra Costa. . . ."

Pursuant to the order of the court, rendered on October 31, 1960, appellant on that very day accepted for filing respondent's application for a building permit. On the following day, November 1, 1960, "the Board of Supervisors of Contra Costa County passed and adopted Ordinance No. 1488," an "emergency measure" which specifically prohibited "[a]ll commercial uses and purposes including but not limited to mortuary, sale or manufacture of monuments or markers, sale of flowers or decorations and sale or manufacture of caskets in a cemetery" except on approval of an application for a land permit. Relying upon the ordinance, appellant refused to process respondent's application; as a consequence respondent sought a second writ of mandate.

Passing upon the application for the second writ, the trial court held the ordinance invalid because "no factual showing of any immediate threat to the preservation of the public peace, health or safety," supported any "emergency." The court found that " 'the emergency seems to have been . . . [respondent's] pending application,' " and, further, that "the passing of such an emergency ordinance in the circumstances shown at bar affords strong evidence in 'support of the trial court's finding of arbitrary action.' " The court ordered "that a writ of mandate be issued to . . . [appellant] commanding him to issue a building permit to . . . [respondent] pursuant to the application of . . . [respondent]. . . ." Appellant has appealed both this and the prior case.

We turn to an examination of the conflicting positions on the first issue: appellant's claim that the "Cemetery Ordinance of Contra Costa County (Ordinance Code §§ 8316 and 8317) does not permit a mortuary use of property dedicated for cemetery purposes," and respondent's contrary assertion that a "mortuary is a 'cemetery purpose' " within the meaning of the ordinance code.

The ordinance provides as follows: "It is hereby declared by the Board of Supervisors that the disposal of human

remains is affected by the public interest. . . . A regulation of cemeteries, as contained in the general state laws, does not meet the public need for regulation of location and layout of cemeteries with respect to other uses of land in the vicinity. The public interest and the protection of the public health, safety, and welfare, the conservation of property values, and the encouragement of the orderly development of the county require that this occupation be regulated.'' (Ordinance Code, § 8316.) ''Cemetery means any one or a combination of more than one of the following in a place used or intended to be used for cemetery purposes: (1) A burial park for earth interments. (2) A mausoleum for crypt or vault interments. (3) A crematory or crematory and columbarium for cinerary interments.'' (Ordinance Code, § 8317(a).)

The county enacted the preceding ordinances in 1955 at a time when sections 7003 and 7004 of the Health and Safety Code were already in force. Section 8317(a) of the ordinance is indeed identical to 7003 of the code. And section 7004 of the code defines '' 'burial park' '' as ''a tract of land for the burial of human remains in the ground, used or intended to be used, and dedicated, for cemetery purposes.'' Section 7020 defines '' 'cemetery business,' '' '' 'cemetery businesses,' '' and '' 'cemetery purposes' '' to mean ''any and all business and purposes requisite to, necessary for, or incident to, establishing, maintaining, operating, improving, or conducting a cemetery, interring human remains, and the care, preservation, and embellishment of cemetery property, including, but not limited to, any activity or business designed for the benefit, service, convenience, education, or spiritual uplift of property owners or persons visiting the cemetery.''

In concluding that a mortuary is a ''cemetery purpose'' within the meaning of section 8317(a) of the ordinance code of Contra Costa County we have been guided by four considerations: the Supreme Court's interpretation of parallel language, the presumption that the county intended to adopt the Supreme Court's construction of that language, the failure of the argument that the alleged enumeration of the uses in the ordinance code precludes the mortuary, and the impact of extant conditions upon the legislative meaning. We discuss these points *infra*.

Although three cases have touched this problem, only the Supreme Court's decision in *Wing* v. *Forest Lawn Cemetery Assn.* (1940), 15 Cal.2d 472 [101 P.2d 1099, 130 A.L.R. 120], casts any clarifying light upon it. The courts in *Forest Lawn*

*etc. Assn.* v. *State Board of E. & F. Directors* (1933), 134 Cal.App. 73 [24 P.2d 887], and *Vesper* v. *Forest Lawn Cemetery Assn.* (1937), 20 Cal.App.2d 157 [67 P.2d 368], confronted the issue but did not decide it. In the first named of these two cases petitioner sought a mandate to compel the State Board of Embalmers and Funeral Directors to grant him a license to conduct the business of a funeral director as provided in Statutes of 1929, chapter 140, despite the fact that the mortuary was located on cemetery grounds. Although the court posed the question whether "the establishment of a mortuary in a cemetery" was "consistent with the purposes for which the land was dedicated" or was "expressly authorized by the Cemetery Act itself" (p. 78), the court specifically refused to pass upon the issue, saying as to this contention, "a judicial question of importance is raised, and were it necessary for the determination of the issues here presented that question would receive serious consideration." (P. 79.) The court concluded that the location of the mortuary in the cemetery did not prevent compliance with the act and issued the mandate. The same court once more formulated, but did not resolve, the issue in the later case of *Vesper* v. *Forest Lawn Cemetery Assn., supra,* 20 Cal.App.2d 157, 161.

While *Wing* may not be binding upon us as a decision of stare decisis, the Supreme Court's language is highly persuasive. Claiming the violation of a restrictive negative easement in her deed, the owner of burial space in the cemetery sought, in that case, to enjoin the operation of a funeral director's existing embalming business on the premises. The court, however, found that the deed did not designate the dominant tenement and therefore concluded that "Since . . . there is no designation of a dominant tenement and no expression of any general plan of which plaintiff's conveyance is a part, there is no basis for holding that her deed contained a valid equitable easement in the lands retained by or subsequently to have been conveyed by her grantor." (P. 483.)

The court likewise probed the question whether "the operation of a mortuary is inconsistent with the holding and occupying of land '*exclusively as a cemetery* for the burial of the dead'" and concluded that it was not. (P. 476.) The lot holder contended that the deed incorporated section 608 of the Civil Code, which provided that lands acquired by a cemetery were to be held and occupied "exclusively as a cemetery for the burial of the dead. . . ." The court assumed

"for the purposes of this opinion only, that the terms of said section were in effect incorporated into plaintiff's deed. . . ." (P. 476.)

Citing other cases which embraced within the term "cemetery" many ancillary purposes, the Supreme Court states: "Cemeteries have always been and are now used primarily for the burial of the dead, but portions of cemetery properties have likewise been used for numerous other incidental purposes, such as greenhouses, nurseries, chapels, administration buildings and tool houses. . . . Manifestly the operation of a mortuary where bodies are prepared for interment or cremation is a much closer and more intimate incident of burial than the activities above referred to. We therefore, conclude that cemetery lands may be used for such purposes as are incident to the burial of the dead, so long as the rights of the lot owners in their own lots and their rights of egress and ingress are not invaded." (Pp. 477, 478.)

The *Wing* decision plays a second role in the interpretation of the ordinance. When the county adopted its ordinance in 1955, the Supreme Court's interpretation of the definition in the Health and Safety Code had been in the books for some 15 years. The county in its ordinance used terminology which corresponded to that in the Health and Safety Code. When one legislative body adopts another such body's identical language, which the Supreme Court has previously interpreted, we cannot assume that the enacting body has disregarded such a clarified definition.

Indeed, we may presume the county intended " 'to adopt the construction as well as the language of the prior enactment. . . .' " (*Holmes* v. *McColgan* (1941), 17 Cal.2d 426, 430 [110 P.2d 428] ; *Erlich* v. *Municipal Court* (1961), 55 Cal.2d 553, 558-559 [11 Cal.Rptr. 758, 360 P.2d 334].) If the definition of "cemetery" in the Health and Safety Code, according to *Wing,* includes a mortuary, Contra Costa County, in using the term, may be presumed to have intended a parallel inclusion.

We cannot believe that the above interpretation fails because, as appellant argues, the ordinance's specification of "several automatic uses" does not include mortuaries and thereby impliedly excludes them. The special listing of "mausoleums" and "crematories" does not mean that "burial parks" could not embrace mortuaries. The term "burial park" must cover all activities falling within "cemetery purposes." Allied to earthen interment or cremation is that which

is preparatory to it: embalming. The embalming and ancillary procedures to interment or cremation are as much "cemetery purposes" in the mortuary as they are in the burial park.

■ We concur with Judge Taylor's observation in his memorandum of decision. "The fact that the state law and the county ordinance specifically provide for mausoleums and crematories in addition to burial parks in the definition of a cemetery does not detract from the definition of 'burial parks,' which includes all uses for cemetery purposes. It merely emphasizes the inclusion of these more recent and, in the case of cremation, more highly regulated cemetery uses."

■ Finally, in view of the current development of the multi-purpose uses of many commercial enterprises, we would hesitate, in the absence of clear legislative expression, to insist that the definition compels but one such use. We cannot construe the ordinance on the assumption that the governing board acted in a dismal disregard of contemporary economic conditions. While yesterday's business unit may have centered on a single function, today's enterprise proliferates into many. The cemetery is no exception to this trend, and in interpreting ordinances enacted in 1955 we read the words "cemetery purposes" in the light of the current economic realities.

Having upheld respondent's position that a mortuary falls within the scope of cemetery purposes as provided in the ordinance code of Contra Costa County, we need not proceed further to its argument that "[t]he State of California has fully occupied the field with respect to the activities of cemetery associations, and Contra Costa County may not contravene nor can it assert definitions and controls contrary to the State." Respondent apparently admits that the county "has the power to determine the *location* of the cemetery, but the County cannot enact an ordinance . . . contrary to the statutes of California . . . or . . . prohibit a cemetery association from carrying on a mortuary business on lands zoned for cemetery purposes."

The argument rests upon the premise that the state statute, in using the words "cemetery purposes," necessarily encompasses the mortuary; thus, respondent's pre-emption point must depend upon the reading of the state enactment in the same manner that we have construed the ordinance. Our interpretation of the ordinance in concurrence with respondent's position renders unnecessary discussion of respondent's further contention as to pre-emption.

██ Appellant's second major contention, as we have set forth above, is that the county effectively defeated the court's order that the permit be issued by the enactment of an emergency ordinance prohibiting the operation of mortuaries in cemeteries. Appellant posits ''the emergency creating the need for interim emergency action'' upon ''the decision of the Superior Court. . . .'' We believe, however, that the pertinent cases, which we discuss below, sustain the trial judge's holding that his own prior ruling could not be the occasion for any such ''emergency'' legislation.

*Munns* v. *Stenman* (1957), 152 Cal.App.2d 543 [314 P.2d 67], involved mandamus proceedings by Munns and Lloyd, and their respective wives, to compel the issuance of building permits for the construction of single-family residences on their properties. Petitioners Munns demonstrated that on November 3, 1953, when the currently effective building ordinance imposed no requirements or conditions for a permit, they had applied for one. Nevertheless the city rejected the request, and on December 1, 1953, enacted an ordinance specifying new requirements and conditions for the issuance of permits. The appellate court stated: ''While it is generally true that such an application must conform to an ordinance passed while action upon the same is pending [citation], that rule seems not applicable to a situation in which the permit clearly should have been issued before amendment to the law. . . . An annotation of this subject in 169 American Law Reports says, at page 585: 'The rule that interim changes in the law affect the determination of pending applications for permits and licenses is not applied where the permit or license should have been issued prior to the change.'. . . The least that can be said in this connection is that the passing of such an emergency ordinance in the circumstances shown at bar affords strong evidence in support of the trial court's finding of arbitrary action.'' (Pp. 551-552.) The court pointed out that ''our decision need not rest upon that ground.'' (P. 552.) It invalidated the ordinance upon the basis of its discriminatory effect. This fact does not reduce the persuasiveness of the quoted language.

In *County of San Diego* v. *Williams* (1954), 126 Cal.App. 2d 804 [272 P.2d 519], defendant purchased nonzoned land for the construction of a trailer park; his application for a permit was denied because of the current circulation of a petition for zoning. When defendant obtained an alternative writ of mandate to secure his permit, the county adopted an

interim ordinance zoning the land exclusively for residential and agricultural use. The court found the ordinance invalid as to defendant; the county thereupon sought an injunction to prohibit the building of the park. In affirming the denial of the injunction the appellate court rested its finding of discrimination against defendant in part upon the nature of the circumstances prompting the passage of the zoning ordinance and the speed of its adoption. Both these concomitants appear here. (See also *Bernstein* v. *Smutz* (1947), 83 Cal.App.2d 108, 124 [188 P.2d 48].)

Appellant relies on two cases for a contrary position but neither sustain the argument. Thus in *Price* v. *Schwafel* (1949), 92 Cal.App.2d 77 [206 P.2d 683], plaintiffs applied on January 12, 1948, for a building permit to construct a shopping center. On January 15, 1948, the city rezoned the property as residential only. Upholding the zoning ordinance, the appellate court rejected plaintiffs' argument of estoppel against the city's assertion of the ordinance, noting that plaintiffs "had ample notice that the city council was not satisfied with the zoning and that plans for the repeal of the May ordinance [allowing construction of a shopping center] were being continually discussed." (P. 84.) The court, however, warned that if "an application for a building permit accompanied by the proper plans and other data had been made during that interim there is no question but that appellants would have been entitled to the permit under the existing 'interim' ordinance." (P. 84.)

Nor does *Miller* v. *Board of Public Works* (1925), 195 Cal. 477 [234 P. 381, 36 A.L.R. 1479], compel a different result. There the city issued a building permit to plaintiffs, then revoked it "for the reason that the city counsel . . . was contemplating a comprehensive zoning plan. . . ." (P. 482.) Plaintiffs filed a complaint to compel issuance of the permit; five days later the city passed an "emergency ordinance" prohibiting the type of construction in the area which plaintiffs had proposed. (P. 482.) The court upheld the ordinance as "an initial unit" of a comprehensive zoning plan and therefore a "valid exercise of the police power." (Pp. 496-497.)

Nothing in the record in the instant case indicates that the ordinance formed any part of a zoning plan or that appellant had even contemplated the ordinance before the trial court's first decision; the enactment of the ordinance stemmed from

the county's attempt to frustrate respondent's plans. The generality of the language of the ordinance does not conceal its single, realistic purpose: the prohibition of respondent's mortuary. As amicus curiae in behalf of respondent states, "Such an isolation of one party as the object of the Board's legislative action is a plain discrimination; one that cannot survive testing under accepted principles of constitutional law. [See e.g., *Yick Wo* v. *Hopkins,* 118 U.S. 356, 373-374 (6 S.Ct. 1064, 30 L.Ed. 220).]"

Neither the attempted frustration of the order of the court nor the narrow interpretation of "cemetery purposes" to exclude a mortuary use can sustain appellant's attempt to upset the trial court's well-considered judgments.

We affirm the judgments.

Bray, P. J., and Duniway, J., concurred.