[L.A. No. 30110. In Bank. Sept. 27, 1973.]

SELBY REALTY COMPANY, Plaintiff and Appellant, v.
CITY OF SAN BUENAVENTURA et al., Defendants and Respondents.

## Counsel

William T. Selby and Harry T. Straitiff for Plaintiff and Appellant.

Goldstein, Barceloux & Goldstein, Thorpe, Sullivan, Clinnin & Workman, Malovos & Chasuk, Raymond G. Lamb, Fadem & Kanner, Gideon Kanner, Acret & Perrochet, James Acret, Harry Zavos and Harvey M. Grossman as Amici Curiae on behalf of Plaintiff and Appellant.

Thompson, Lyders & Laing, K. D. Lyders and James E. Dixon for Defendants and Respondents.

Evelle J. Younger, Attorney General, Nicholas C. Yost and E. Clement Shute, Jr., Deputy Attorneys General, John D. Maharg, County Counsel (Los Angeles), William F. Stewart, Deputy County Counsel, Martin & Flandrick, Robert Flandrick, Harry S. Fenton, Joseph A. Montoya, Robert L. Meyer, Hugh R. Williams, Jack M. Miller, Rogers, Vizzard & Tallett, John Rogers, Miller, Groezinger, Pettit & Evers and Robert A. Thompson as Amici Curiae on behalf of Defendants and Respondents.

## Opinion

**MOSK, J.**—Plaintiff is a California corporation which owns several parcels of land, some located within the County of Ventura (hereafter referred to as the county) and some within the City of San Buenaventura (hereafter the city). In 1968 the city and county adopted the Ventura Avenue Area General Plan pursuant to section 65300 et seq. of the Government Code.[1] As required by section 65302, subdivision (b), the plan contained a circulation element indicating the general location of existing and proposed streets. It revealed a proposed extension of Cedar Street over the western boundary line of one parcel of plaintiff's city property, and other proposed streets extending through plaintiff's county land.

The property upon which the proposed extension of Cedar Street was shown had been zoned for multiple dwellings by the city, and in 1970 plaintiff applied to the city for a building permit to construct a 54-unit apartment complex on that parcel. The application indicated that plaintiff intended to construct the buildings upon a portion of its property which

---

[1]Throughout this opinion all references are to the Government Code unless otherwise noted.

the plan outlined as the location for the proposed extension of Cedar Street. The city denied the permit, assertedly because plaintiff refused to dedicate the extension of Cedar Street included in the plan.

Plaintiff filed this action seeking declaratory relief, damages, and a writ of mandate, against the city, the county, and several of their officials. The complaint contains six causes of action. It seeks, inter alia, a declaration of the manner in which the general plan affects plaintiff's rights in its city and county property, a writ of mandate to compel the issuance of a building permit, and damages in inverse condemnation.

The trial court sustained general and special demurrers to those counts of the complaint alleging a cause of action against the county and the individual city and county defendants. It also sustained the city's demurrer to the complaint "on each and every ground asserted" but granted plaintiff leave to amend insofar as the complaint sought "judicial review of the city's alleged denial of plaintiff's application for a building permit." Plaintiff failed to amend, and judgments of dismissal were entered as to all defendants.

Before reaching the complex issues before us, we first summarize significant statutory provisions relating to the enactment and effect of general plans. Under the Government Code, the legislative body of each city and county must establish a planning agency (§ 65100) which shall adopt a comprehensive, long-term general plan for the physical development of the city or county (§ 65300). As noted above, the plan must include a circulation element showing the general location of existing and proposed streets (§ 65302, subd. (b)). The plan may be changed after notice and hearing if the legislative body deems a change to be in the public interest (§ 65356.1). Cooperation between city and county planning agencies is encouraged (§§ 65305, 65306, 65650, 65651), and a city and county may adopt the same general plan (§ 65360).

The code is less specific as to the implementation of a general plan. Prior to 1971, it provided only that the planning agency should make recommendations and reports to the legislative body and consult with others regarding implementation of the plan (§ 65400), and that legislative bodies are required to give consideration to conformity with the general plan in the acquisition or abandonment of property or the construction of public works (§§ 65401, 65402). Recent legislation requires county and city zoning ordinances to be consistent with the general plan by January 1, 1974. (§ 65860, subd. (a); Stats. 1973, ch. 120.)[2]

---

[2] The Government Code contains more specific provisions regarding the implementation of other types of plans. For example, planning agencies are authorized to adopt

*Plaintiff's action against the county defendants*

In the first cause of action, which sounds in declaratory relief, plaintiff alleges that the general plan adopted by the county shows certain proposed streets extending through its county and city property, and that no payment has been offered for any of plaintiff's land upon which the proposed streets would be located. Allegations follow regarding plaintiff's application to the city for the building permit, and the city's denial of the permit. It is alleged that there are actual controversies relating to the legal rights and duties of the parties. Plaintiff seeks a determination of the validity of the general plan as it affects plaintiff's land, a declaration as to whether there has been a taking of its property for public use, and a judgment setting forth plaintiff's rights in the event a taking has occurred. It is asserted that these allegations state a cause of action for declaratory relief against the county on the theory that the county, by adopting the general plan jointly with the city showing the proposed streets extending through plaintiff's land, effected a taking of the property.

■ Section 1060 of the Code of Civil Procedure provides that "Any person . . . who desires a declaration of his rights or duties with respect to another, or in respect to . . . property . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an action in the superior court for a declaration of his rights and duties in the premises." The "actual controversy" referred to in this statute is one which admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, not suggest, what the parties may or may not do. (*Silva* v. *City & County of San Francisco* (1948) 87 Cal.App.2d 784, 789 [198 P.2d 78]; *Conroy* v. *Civil Service Commission* (1946) 75 Cal.App.2d 450, 456 [171 P.2d 500].)

■ We cannot discern in the foregoing allegations any concrete dispute between plaintiff and the county which admits of definitive and conclusive judicial relief. The county has taken no action with respect to plaintiff's land except to enact a general plan describing proposed streets, as required by state law. The fact that some of the proposed streets, if ultimately constructed, will cross plaintiff's property gives this plaintiff no greater right to secure a declaration as to the validity of the plan or its

a specific plan (§ 65450 et seq.) and to include regulations limiting the location of buildings and other improvements in planned rights of way (§ 65451). Another type of plan specified by the code is an open space plan (§ 65560 et seq.); building permits may not be issued unless the proposed construction is consistent with the local open space plan (§ 65567).

effect upon his land than that available to any other citizen whose property is included within the plan. The plan is by its very nature merely tentative and subject to change. Whether eventually any part of plaintiff's land will be taken for a street depends upon unpredictable future events. If the plan is implemented by the county in the future in such manner as actually to affect plaintiff's free use of his property, the validity of the county's action may be challenged at that time.

■ The adoption of a general plan is a legislative act. Since the wisdom of the plan is within the legislative and not the judicial sphere, a landowner may not maintain an action in declaratory relief to probe the merits of the plan absent allegation of a defect in the proceedings leading to its enactment. (*Mills* v. *S.F. Bay Area Rapid Transit Dist.* (1968) 261 Cal. App.2d 666, 668 [68 Cal.Rptr. 317]; cf. *O. T. Johnson Corp.* v. *City of Los Angeles* (1926) 198 Cal. 308, 324 [245 P. 164].)

*Silva* v. *City & County of San Francisco, supra,* 87 Cal.App.2d 784, involved circumstances analogous to the instant problem. In *Silva,* the board of supervisors had declared that plaintiff's land would be acquired by eminent domain "when necessary," and plaintiff sought a declaration that the proper compensation for his property was its value at the time the complaint was filed. The court held that there was no actual controversy between the parties since the only judgment which could be rendered would be of an advisory nature, i.e., a declaration of the value of the land when the city deemed it necessary to acquire the property. In this case the rights of plaintiff are even more attenuated than in *Silva* since there is no present concrete indication that the county either intends to use plaintiff's property for the proposed streets or that it intends to acquire the property by condemnation.[3]

■ It is clear, therefore, that the trial court properly sustained the demurrers of the county and the individual county defendants to the first cause of action.

Although plaintiff did not originally allege that the county's adoption of the general plan amounted to inverse condemnation of its property,[4]

---

[3]The plan makes only vague references to public acquisition. It states that the area designated for park and recreation purposes should be obtained as soon as possible to avert cost increases, and that part of the funds for acquisition could be obtained from the federal government. The plan states further that "[W]hat is considered here is a priority listing of projects and programs and a similar sequence of public acquisition and other capital outlays dealing with issues and problems of the area. These are coordinated and scheduled, resulting in a specific program of action for the next five or six years."

[4]The sixth cause of action for inverse condemnation is asserted against only the city.

it now asserts that the county's action in adopting the plan amounted to a "taking" of its property, and that the facts pleaded are sufficient to allege such a taking. Plaintiff cites as authority the case of *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345], which was decided after the trial court's judgment herein was rendered.

Even if on some theory the bald allegations of the complaint in the abstract may be deemed to state a cause of action for inverse condemnation, the demurrers were properly sustained since it is clear that the county could not be held liable. (See *Routh* v. *Quinn* (1942) 20 Cal.2d 488, 493-494 [127 P.2d 1, 149 A.L.R. 215].) Such a cause of action could have been based only upon the county's adoption of the general plan. Neither *Klopping* nor any other decision of which we are aware holds that the enactment of a general plan for the future development of an area, indicating potential public uses of privately owned land, amounts to inverse condemnation of that land.

In *Klopping,* the City of Whittier initiated condemnation proceedings against the plaintiff's property. Subsequently, the city dismissed the action but declared its intention to take the precise property in the future. Plaintiffs sued in inverse condemnation, alleging that the fair market value of their properties had declined as a result of the city's announcement of its intention to condemn, that there was a cloud over their property, and that they had lost rentals as a result of the city's conduct. We held that if the city had acted unreasonably in issuing precondemnation statements, either by excessively delaying eminent domain proceedings or by other oppressive conduct, the owner was entitled to maintain an action in inverse condemnation.

The instant case involves entirely different circumstances. The adoption of a general plan is several leagues short of a firm declaration of an intention to condemn property. It is too clearly established to require extensive citation of authority that under certain circumstances a governmental body may require the dedication of property as a condition for its development (see, e.g., *Associated Home Builders etc., Inc.* v. *City of Walnut Creek* (1971) 4 Cal.3d 633, 639 et seq. [94 Cal.Rptr. 630, 484 P.2d 606, 43 A.L.R.3d 847]; *Ayres* v. *City Council of City of Los Angeles* (1949) 34 Cal.2d 31, 41-42 [207 P.2d 1, 11 A.L.R.2d 503]) and it may not be necessary for the county to acquire the land by eminent domain even if it is ultimately used for a public purpose. In order to state a cause of action for inverse condemnation, there must be an invasion or an appropriation of some valuable property right which the landowner possesses and the invasion or appropriation must directly and

specially affect the landowner to his injury. (See *Hilltop Properties* v. *State of California* (1965) 233 Cal.App.2d 349, 355-356 [43 Cal.Rptr. 605, 37 A.L.R.3d 109].) The county has not placed any obstacles in the path of plaintiff in the use of its land. Plaintiff has not been refused permission by the county to build on or subdivide its county land, and its posture is no different than that of any other landowner along the streets identified in the plan. Furthermore, the plan is subject to alteration, modification or ultimate abandonment, so that there is no assurance that any public use will eventually be made of plaintiff's property.

Two other cases relied upon by plaintiff are equally unpersuasive. One involved an unconstitutional attempt to rezone the plaintiff's property so that it could be acquired for a public use upon payment of a lower price (*Kissinger* v. *City of Los Angeles* (1958) 161 Cal.App.2d 454, 462 [327 P.2d 10]), and the other upheld a claim of inverse condemnation because the county had announced its intention to condemn plaintiff's land for an airport, rezoned and restricted the use of that property so that its value would be depressed in the event of future public acquisition, refused permission to subdivide, and finally abandoned the airport project altogether (*Peacock* v. *County of Sacramento* (1969) 271 Cal.App.2d 845 [77 Cal. Rptr. 391]).

The deleterious consequences of haphazard community growth in this state and the need to prevent further random development are evident to even the most casual observer. The Legislature has attempted to alleviate the problem by authorizing the adoption of long-range plans for orderly progress. Thus, it has provided not only for the adoption of general plans but also regional plans (§ 65060 et seq.), specific plans (§ 65450 et seq.), district plans (§ 66105 et seq.), and a comprehensive plan for the conservation of San Francisco Bay (§ 66650 et seq.). In addition, the voters recently passed an initiative measure providing the mechanism for adoption of plans to preserve and protect the state's coastline. (Pub. Resources Code, § 27000 et seq.)

If a governmental entity and its responsible officials were held subject to a claim for inverse condemnation merely because a parcel of land was designated for potential public use on one of these several authorized plans, the process of community planning would either grind to a halt, or deteriorate to publication of vacuous generalizations regarding the future use of land.[5] We indulge in no hyperbole to suggest that if every land-

---

[5] *Klopping* itself recognized the danger to beneficial long-range planning in the indiscriminate application of the doctrine of inverse condemnation. (8 Cal.3d at p. 45, fn. 1.)

owner whose property might be affected at some vague and distant future time by any of these legislatively permissible plans was entitled to bring an action in declaratory relief to obtain a judicial declaration as to the validity and potential effect of the plan upon his land, the courts of this state would be inundated with futile litigation. It is clear, under all the circumstances, that plaintiff has not stated a cause of action against the county defendants for either declaratory relief or inverse condemnation.

■ Of the remaining causes of action alleged in the complaint, only one relates to the county defendants.[6] The fourth cause of action alleges that the city and county are engaged in a "scheme" to take plaintiff's land without payment. Since the only conduct of the county consisted of adopting a general plan as required by state law, and since we have concluded that the adoption of the plan did not constitute a taking of plaintiff's property, the trial court properly sustained the demurrers of the county defendants to this cause of action.

*Plaintiff's action against the city defendants*[7]

The contentions against the city are based not merely upon the adoption of a general plan by the city, but on conduct directly affecting plaintiff's use of its land.

After asserting that the city adopted the plan proposing the extension of Cedar Street through plaintiff's property, the complaint alleges as follows: On November 13, 1970, plaintiff applied to the city for a building permit to construct apartment houses on its city property. The plans were submitted to the planning commission pursuant to section 8129A.2 of a city ordinance, which provides that the planning commission shall disapprove building plans if it finds that the architecture or functional concept of a proposed building will reflect such variance with other structures in the neighborhood as to cause substantial depreciation in property values. The commission's staff recommended disapproval of plaintiff's proposal because it did not provide for the extension of Cedar Street through

---

[6]The second cause of action alleges that certain resolutions purportedly adopted by the city's planning commission and city council were not in fact adopted in that form; the third cause of action alleges that plaintiff was damaged by the refusal of the building permit, and the fifth cause of action seeks a writ of mandate to compel the issuance of a permit. The sixth cause of action seeks inverse condemnation against the city.

[7]Plaintiff joined as defendants the planning commission, the city council and the members of these bodies, as well as the city's "building official" who assertedly had the duty of issuing permits, and the director of community development.

plaintiff's property, as indicated on the general plan.[8] On December 8, 1970, the planning commission held a hearing at which the staff reported that the proposed development was in all respects a suitable structure, and that the only objection to the plan was the failure to provide for the future extension of Cedar Street. The commission adopted a resolution denying approval on the ground that the project did not meet the requirements of the code.

The complaint continues: Plaintiff appealed the matter to the city council. The council upheld the planning commission and adopted a resolution relating that a hearing had been held at which the members of the council had personally familiarized themselves with the characteristics of the property, and that based upon all the evidence they found that insufficient facts had been presented to justify the granting of a permit. The resolution declared, "The proposed use . . . would be detrimental to the public interest, safety, health, morals, or general welfare or injurious to the property or improvements in the same vicinity and zone in which the property is located."

Plaintiff was unable to ascertain from the text of the resolutions of the planning commission and the city council the reason it was denied a building permit, and addressed a letter to the city clerk asking that the city inform plaintiff as to the requirements for issuance of a permit. On February 2, 1971, the city's principal planner wrote plaintiff that it must submit plans for the buildings, and that such plans must indicate that plaintiff would dedicate and construct the extension of Cedar Street shown on the general plan as extending through plaintiff's property. On March 4, 1971, plaintiff filed a claim with the city alleging that the city had accomplished a taking of its land, and it sought compensation therefor; that claim was denied.

The city demurred generally to each of the six causes of action, and also filed special demurrers to all but the third cause of action. As noted above, the trial court sustained these general and special demurrers but gave plaintiff 30 days to amend "insofar as plaintiff's complaint purportedly seeks . . . judical review of the city's alleged denial of plaintiff's application for a building permit."

Since plaintiff failed to amend, the question on this appeal is whether

---

[8]The staff report stated, "it is felt that the extension of Cedar Street is essential to eliminate present and future traffic problems from Ventura Avenue . . . . Justification for denial is based upon the disharmony or conflict to the circulation of the area . . . ."

the complaint states a cause of action for relief. ■ We approach this problem with recognition of the well accepted principle that against a general demurrer the only requirement is that upon a consideration of all the facts stated it must appear plaintiff is entitled to some relief, notwithstanding that the facts may be inartfully stated, or may be intermingled with a statement of other facts irrelevant to the cause of action, or plaintiff may demand relief to which he is not entitled under the facts alleged. (*Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 549 [99 Cal.Rptr. 745, 492 P.2d 1137].) Applying these principles to the complaint, we conclude that plaintiff has stated a cause of action against the city for a writ of mandate to compel the issuance of a building permit and that, therefore, the court erred in sustaining the general demurrer to the fifth cause of action.

## I. *The fifth cause of action*

The fifth cause of action, after incorporating by reference the factual allegations set forth above regarding the adoption of the general plan by the city and the denial of the permit, alleges that the only authorization for the planning commission to deny the permit was a determination under section 8129A.2 of the city code that the proposed buildings would depreciate property values in the neighborhood, that no such finding was made, that the plans submitted fully complied with all building laws and regulations, and that the property was zoned for apartment buildings.

### A. *The general demurrer*

■ The city first contends that if plaintiff is entitled to any relief in mandamus its cause of action sounds in administrative mandamus (Code Civ. Proc., § 1094.5) and that plaintiff has not stated a cause of action for such relief but, rather, that it improperly seeks to compel issuance of the writ by an action sounding in "traditional mandamus" (Code Civ. Proc., § 1085). It is argued that plaintiff did not take advantage of the trial court's order permitting it to amend the complaint to allege a cause of action under section 1094.5, and that, therefore, the trial court was justified in dismissing the action. We agree that administrative mandamus is the proper remedy here (*Gong* v. *City of Fremont* (1967) 250 Cal. App.2d 568, 571-573 [58 Cal.Rptr. 664]), but it does not follow that the complaint is insufficient to state a cause of action for such relief.

Subdivision (b) of section 1094.5 of the Code of Civil Procedure provides that the scope of inquiry in a mandamus proceeding brought to inquire into the validity of a final administrative order shall extend to

whether the respondent has proceeded without or in excess of jurisdiction, whether there was a fair trial, and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the decision is not supported by the findings, or the findings are not supported by the evidence.

In determining whether plaintiff has alleged facts sufficient to assert an abuse of discretion by the city, it is first necessary to ascertain the ground upon which the building permit was denied. Although not crystal clear on the face of the complaint, the allegations appear adequate to allege that the basis for the denial of the permit was plaintiff's failure to dedicate and improve the extension of Cedar Street.[9] No other specific reason for the denial was given to plaintiff, and the city admitted in its points and authorities in support of the demurrer, as it does on appeal, that this constituted the primary reason for the denial. The city offers no other justification.

Plaintiff alleges that its project fully complied with all building laws and regulations, and that the land was zoned for the proposed use. We must, of course, accept these allegations as true for the purposes of the demurrer. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].) The city, in opposition to this assertion, asks us to take judicial notice of section 8323 of its code which assertedly now justifies denial of the permit because of plaintiff's failure to dedicate and improve Cedar Street. (Evid. Code, § 452, subd. (b).) The section provides that the issuance of a building permit may be conditioned upon the dedication of a right-of-way if the city manager finds that the proposed

---

[9]Section 8129A.2 of the city code gives the planning commission the authority to disapprove a plan on the ground that it is in disharmony with other buildings in the neighborhood; plaintiff alleges that no such finding was made, and the city upon demurrer must be deemed to admit this assertion. As we have seen, the planning commission's resolution of denial stated only that plaintiff had failed to comply with the city's ordinance code; no statutory provision was specified. According to the allegations, all the evidence at the hearing was to the effect that the proposed structures would be beneficial to the neighborhood, and the only objection stated to approval of the plan related to plaintiff's failure to dedicate the extension of Cedar Street. Under the allegations, therefore, there was no justification for the commission's disapproval of the plans under section 8129A.2, nor a finding that the plans were disapproved because the buildings proposed were in disharmony with other buildings in the neighborhood.

The city council's resolution is at least as vague as that of the planning commission. The council upheld the determination of the planning commission to deny the permit on the ground that "the proposed use of this parcel would be detrimental to the public interest, safety, health, morals, or general welfare or injurious to the property or improvements in the same vicinity and zone in which the property is located." We need not speculate as to the meaning of this broad and ambiguous declaration *since the city does not claim that the resolution was intended to express disapproval of the plans on the basis of the finding permitted under section 8129A.2.

improvement will cause an increase in traffic which will create the need for additional rights-of-way.[10] However, at the time the permit was denied section 8323 clearly did not authorize the city to deny the permit on this ground. At that time the ordinance required dedication only for the widening of existing streets.

Although the complaint cannot be deemed a model of precise pleading, it appears sufficient, as against a general demurrer, to state a cause of action for mandamus, on the ground that the city abused its discretion in denying the permit since plaintiff met all valid requirements for its issuance. It was error, therefore, for the trial court to sustain the general demurrer to the fifth cause of action.

The effect of the amended version of section 8323 of the city's code should be discussed for the guidance of the trial court on remand. ▆▆ Several cases have held that the mere application for a building permit or the submission of plans which comply with the law in existence at the time of such submission do not entitle an applicant to the issuance of the permit if, in the interim between administrative denial of the permit and the appeal from that denial, an ordinance has been enacted which would prohibit the project contemplated. (*Sunny Slope Water Cò.* v. *City of Pasadena* (1934) 1 Cal.2d 87, 91 [33 P.2d 672]; *Wheat* v. *Barrett* (1930) 210 Cal. 193, 195 et seq. [290 P. 1033]; *West Coast Advertising Co.* v. *City & County of San Francisco* (1967) 256 Cal.App.2d 357, 360 [64 Cal.Rptr. 94]; cf. *Thompson* v. *City of Los Angeles* (1947) 82 Cal.App.2d 45, 47 [185 P.2d 393].) It is the prevailing rule that a reviewing court will apply the law in existence at the time of its decision rather than at the time the permit was denied. (See 3 Anderson, American Law of Zoning (1968) p. 599.) The purpose of the rule is to prevent an appellate court from issuing orders for the construction of improvements contrary to presently existing legislative provisions. (Cf. *Ziffrin, Inc.* v. *United States* (1943) 318 U.S. 73, 78 [87 L.Ed. 621, 625-626, 63 S.Ct. 465].) ▆▆ Indeed, even after a permit has been issued, it may be revoked by an administrative body on the basis of a subsequent change in the zoning laws unless the permittee has made substantial improvements in good faith reliance on the permit. (See *Russian Hill Improvement Assn.* v.

---

[10]Section 8323 is consistent with section 65909 of the Government Code, which provides: "No local governmental body, or any agency thereof, may condition the issuance of any building or use permit or zone variance on any or all of the following: [¶] (1) The dedication of land for any purpose not reasonably related to the use of the property for which the variance, building, or use permit is requested. [¶] (2) The posting of a bond to guarantee installation of public improvements not reasonably related to the use of the property for which the variance, building, or use permit is requested."

*Board of Permit Appeals* (1967) 66 Cal.2d 34, 39 [56 Cal.Rptr. 672, 423 P.2d 824]; *Brougher* v. *Board of Public Works* (1928) 205 Cal. 426, 432-435 [271 P. 487].)[11]

 Thus, the amended version of section 8323 is applicable to plaintiff's request for a permit even though the ordinance was amended after the permit was denied. However, the ordinance does not expressly prohibit the building proposed by plaintiff, but only allows the city manager to exercise his discretion to determine whether a proposed improvement creates a need for additional streets and, if so, to require dedication of land as a condition to issuance of the permit. We are not, of course, called upon to determine whether the city manager can properly apply the amendment of section 8323 to plaintiff's proposed development since as yet there have been no steps taken by the city to render it applicable.

## B. *The special demurrer*

 The city filed a special demurrer to the fifth cause of action on the ground that several causes of action were alleged and not separately stated in that plaintiff purports to seek declaratory relief with regard to the general plan and various administrative decisions, which are separate and distinct transactions. The trial court sustained the demurrer. Plaintiff alleged the factual matters underlying all its claims in the first cause of action, and incorporated these allegations in the subsequent causes of action. While it is true that these incorporated allegations alleged the facts regarding the adoption of the general plan in addition to the denial of the building permit, nevertheless plaintiff stated the fifth cause of action for mandate in a separate count. We perceive no significant defect in the fifth cause of action on the ground stated in the special demurrer.

## II. *The remaining causes of action against the city*

 As we have seen, plaintiff's first cause of action is for declaratory relief. We conclude that the trial court properly sustained the city's de-

---

[11]The cases holding that an appellate court will apply the rule in existence at the time of deciding the appeal appear to be inconsistent with another line of authority holding that if an applicant complies with all the requirements for a building permit at the time the application is made he is entitled to a permit even though the law has been changed prior to the decision on appeal. (See, e.g., *Sunset View Cemetery Assn.* v. *Kraintz* (1961) 196 Cal.App.2d 115, 123-124 [16 Cal.Rptr. 317]; *McCombs* v. *Larson* (1959) 176 Cal.App.2d 105, 107 [1 Cal.Rptr. 140]; *Munns* v. *Stenman* (1957) 152 Cal.App.2d 543, 551 [314 P.2d 67].) These two apparently conflicting lines of cases have been distinguished on the ground that the change in the ordinance is deemed inapplicable if its enactment stemmed from an attempt to frustrate a particular developer's plans. (*Russian Hill Improvement Assn.* v. *Board of Permit Appeals, supra,* 66 Cal.2d 34, fn. 5 at p. 37; Cal. Zoning Practice (Cont.Ed.Bar 1969) § 5.57; cf. *Keizer* v. *Adams* (1970) 2 Cal.3d 976 [88 Cal.Rptr. 183, 471 P.2d 983].)

murrers to this cause of action. Plaintiff is not entitled to such relief merely on the basis of the enactment of the general plan by the city, under the rationale set forth above with regard to the county; to the extent the first cause of action seeks a declaration regarding the propriety of the denial of the building permit, it is settled that declaratory relief is not an appropriate method for judicial review of administrative decisions. (*Escrow Owners Assn. Inc.* v. *Taft Allen, Inc.* (1967) 252 Cal.App.2d 506, 510 [60 Cal.Rptr. 755]; *Floresta, Inc.* v. *City Council* (1961) 190 Cal.App.2d 599, 612 [12 Cal.Rptr. 182].)

The second cause of action, after incorporating by reference the factual allegations of the first, alleges only that the city council and the planning commission did not adopt the resolutions alleged in the first cause of action. Plaintiff apparently attempted to plead the second cause of action as an "inconsistent count" to the first. (See *Tanforan* v. *Tanforan* (1916) 173 Cal. 270, 273 [159 P. 709].) However, no relief is requested as to the second count, and no legal theory is suggested upon which any relief may be granted. Clearly, the mere allegation of the existence of facts inconsistent with the first count does not state a cause of action.

The third cause of action seeks damages against the city for the cost of the preparation of plaintiff's plans and for the monthly rental value of the proposed apartments. Section 818.4 of the Government Code provides that a public entity is not liable for an injury caused by the refusal to issue a permit where the entity is authorized by law to determine whether or not the permit should be issued. (See also Gov. Code, § 821.2.) Manifestly this statute is a bar to the third cause of action.

In the fourth cause of action, plaintiff alleges that a "scheme" exists among the defendants to take its land without compensation, that in furtherance of that "scheme" the city has denied plaintiff a permit to build its apartment houses for the purpose of "extorting" plaintiff's land. Insofar as the "scheme" alleged involves the adoption of a plan by the city, the same considerations set forth above with regard to the county's adoption of the general plan are applicable; the mere enactment of a general plan cannot be deemed a "taking." As to the denial of the permit, plaintiff appears to attempt to state a cause of action for a civil conspiracy. However, for such a cause of action to be maintained, there must be alleged an act in furtherance of the conspiracy which is itself a tort. The denial of a building permit by a governmental body authorized to do so does not amount to a tort, much less to a scheme to extort. (See Gov. Code, § 818.4.)

The sixth cause of action sounds in inverse condemnation and alleges that the city has "taken" plaintiff's property without compensation.

Again, insofar as this cause of action is based upon the adoption of the general plan, there is no "taking" of the property. ▮ Nor is a cause of action in inverse condemnation stated for the denial of a building permit. The gravamen of plaintiff's complaint is that the city refused to issue the permit unless plaintiff complied with an assertedly invalid condition. ▮ The appropriate method by which to consider such a claim is by a proceeding in mandamus under section 1094.5 of the Code of Civil Procedure. (See *Gong* v. *City of Fremont, supra,* 250 Cal.App.2d 568, 575; *Mid-way Cabinet etc. Mfg.* v. *County of San Joaquin* (1967) 257 Cal.App. 2d 181, 191 [65 Cal.Rptr. 37].)

The judgment is reversed as to the fifth cause of action against the city defendants, and in all other respects the judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

Clark, J., did not participate.