[Civ. No. 36070. First Dist., Div. One. Dec. 17, 1975.]

ELGIN CAPITAL CORPORATION et al.,
Cross-complainants and Appellants, v.
COUNTY OF SANTA CLARA,
Cross-defendant and Respondent.

COUNSEL

Timothy J. Ward for Cross-complainants and Appellants.

William M. Siegel, County Counsel, and Donald J. Baker, Deputy County Counsel, for Cross-defendant and Respondent.

OPINION

**ELKINGTON, J.**—Elgin Associates and Elgin Capital Corporation (hereafter collectively the "Elgins") were the owners, respectively, of 383

acres and 75 acres of land in Santa Clara County. The property was taken for use as a public park by the county and compensation was paid therefor, in the course of the two instant eminent domain actions. During the proceedings below, the Elgins were permitted to file cross-complaints seeking damages for an inverse condemnation "taking" of the property during the period from "early 1971" to January 28, 1973, the date of commencement of the actions by the county.

The parties stipulated that under their cross-complaints the Elgins "would present evidence to the Court, at the conclusion of the jury trial [of the *direct* condemnation phase of the actions], for the express purpose of a ruling as to the date of 'taking', if any, of the subject property as a result of 'excessive precondemnation announcements', 'unreasonable delay' in bringing the earlier condemnation actions, and other 'oppressive conduct' on the part of the County of Santa Clara, the cross-defendant."

At the trial on the issues of their cross-complaints the Elgins contended that the county, having announced its intention to acquire their property and obtained federal or state assistance therefor and then having delayed the acquisition for a period of 22 months, was liable in damages for inverse condemnation. Their principal reliance was upon *Klopping* v. *City of Whittier,* 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345], *Selby Realty Co.* v. *City of San Buenaventura,* 10 Cal.3d 110 [109 Cal.Rptr. 799, 514 P.2d 111], and *Drakes Bay Land Company* v. *United States,* 424 F.2d 574 [191 Ct.Cl. 389].

The trial court concluded that: "Cross-complainants have not shown that their allegations of 'precondemnation announcements', 'excessive delay' in acquisition by the condemnor, or other 'oppressive conduct' on the part of the condemnor constitute an actionable taking or damaging by the cross-defendant sounding in inverse condemnation." Judgment on the cross-complaint was entered accordingly, and the Elgins have appealed.

We interpret the above-quoted conclusion of the court as a finding that the evidence established neither "*excessive* precondemnation announcements," nor "*unreasonable* delay," nor "*oppressive* conduct" on the part of Santa Clara County.*

---

*Although stated as a conclusion of law, it may properly be deemed a finding of ultimate fact, or at least on a mixed question of ultimate fact and law. It is proper for us to so treat it. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 323, p. 3127.)

The question then, for our determination, is whether the trial court's negative finding on the stipulated issues was supported by substantial evidence. We may not ourselves weigh the evidence and resolve its conflicts. ■ Instead we follow the rule that when a court's finding or a jury's verdict is attacked on the ground that it is not sustained by the evidence, the power of an appellate court begins and ends with the determination whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding or verdict. Questions of credibility must be resolved in favor of the fact finder's determination, and when two or more inferences can reasonably be drawn from the evidence, a reviewing court may not substitute its deductions for those of the trier of fact. If on any material point the evidence is in conflict, it must be assumed that the court or jury resolved the conflict in favor of the prevailing party. (*Nestle* v. *City of Santa Monica,* 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480]; *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 784 [59 Cal.Rptr. 141, 427 P.2d 805].)

■ It is of course true that upon proof of "excessive precondemnation announcements," "unreasonable delay" or "oppressive conduct" by a condemning authority, one injured thereby has a remedy through inverse condemnation. But the authorities so holding also point out "the danger to beneficial long-range planning in the indiscriminate application of the doctrine of inverse condemnation." (See *Selby Realty Co.* v. *City of San Buenaventura, supra,* 10 Cal.3d 110, 120, fn. 5.) "[T]o allow recovery under all circumstances for decreases in the market value caused by precondemnation announcements might deter public agencies from announcing sufficiently in advance their intention to condemn. The salutary by-products of such publicity have been recognized by this court . . . . [A] reasonable interval of time between an announcement of intent and the issuance of the summons serves the public interest. Therefore, in order to insure meaningful public input into condemnation decisions, it may be necessary for the condemnee to bear slight incidental loss. . . . Thus a public authority is not required to compensate a landowner for damages to his property occurring after the announcement *if the injury is not unreasonably caused by the condemning agency*; . . ." (Italics added; fn. omitted.) "Only in unusual circumstances would an announcement of intent to condemn constitute a de facto taking." (*Klopping* v. *City of Whittier, supra,* 8 Cal.3d 39, 51-52 and fn. 5.) Other high authority emphasizes that planning authorities should not act so hastily as to "discourage the government's use of procedures, such as public hearings, which afford the public some direct participation in the planning and

placement of [public] projects." (*Merced Irrigation Dist.* v. *Woolsten-hulme,* 4 Cal.3d 478, 496, fn. 9 [93 Cal.Rptr. 833, 483 P.2d 1].)

The trial court here also made detailed factual findings, uncriticized by the Elgins, as follows:

"In March of 1971 the 'Sanborn-Skyline' Park was proposed to the County Board of Supervisors by the Santa Clara County Planning Policy Commission and the Director of Parks and Recreation, B. V. Amyx. A 'preliminary land use study' of the proposed Sanborn-Skyline Park was presented by parks director Amyx to the County Board of Supervisors at a meeting held June 15, 1971, said study including specific reference to the cross-complainants' property along with other property being proposed for inclusion within this park. . . .

"On June 16, 1971 the San Jose Mercury newspaper contained an article entitled 'County Seeks Aid for Huge Skyline Park,' wherein the County parks director and the preliminary land use study are referred to and quoted in part, including specific reference to the inclusion of certain property owned by the cross-complainants as a part of the proposed park acreage. . . .

"County parks and recreation director B. V. Amyx on various occasions informed certain persons of the County's plan to acquire the subject property for the proposed park, the persons and dates of such communications being: on or around September of 1971 one Paul Reimer, an architect employed by George S. Nolte and Associates, civil engineers; Robert Maxfield, a real estate appraiser for Barclays Bank of California was so informed on or about October of 1971; Dr. Robert K. Yeaton was so informed on or about June 1972. . . .

"On or about October 1, 1971 appraiser Floyd D. Clevenger, M.A.I. was retained by the County of Santa Clara to appraise the cross-complainants' property in connection with acquisition cost estimates. . . .

"On or about February 15, 1972 the County Board of Supervisors accepted matching funds from the State of California land and water conservation fund to be used in financing fifty percent of the estimated cost of acquisition of the property sought for this park."

"Cross-defendant County of Santa Clara adopted resolutions to condemn the property in the above-entitled actions on December 19,

1972. Complaints were filed and summonses issued in these consolidated actions on January 26, 1973."

It will be seen that about 10 months, a substantial portion of the complained of delay of 22 months, occurred between the county's February 15, 1972, acceptance of "matching funds" from the state and the December 19, 1972, resolution to condemn. The record establishes that the amount of land and the boundaries of the proposed park were unknown at the time of the matching funds' acceptance, and that these matters were being worked out during much of the remainder of 1972.

We observe also that Code of Civil Procedure section 1243.1 requires a public entity to commence an action in eminent domain within six months after it "establishes by resolution or ordinance the necessity to acquire a particular parcel or parcels of real property by eminent domain, . . ." Here such an action was filed about five weeks after the county's resolution of condemnation.

From a consideration of the whole record, bearing in mind the expressed rationale of the authoritative cases, we are of the opinion that there was substantial evidence that such injury as the Elgins suffered was "not *unreasonably* caused by the condemning agency." (See *Klopping* v. *City of Whittier, supra,* 8 Cal.3d 39, 52.) We further opine that there is similar support for the trial court's finding that the allegations of "excessive precondemnation announcements," unreasonable or "excessive delay" and "oppressive conduct" by the county had not been proved.

We have considered the Elgins' suggestion that: "Where, as here, the facts are not in dispute, the issue is one of law, and this court is free to draw its own conclusions of law from such undisputed facts." We do not find the issue to be one of law, for opposing inferences might reasonably be drawn from the established facts, and the question of reasonableness is ordinarily one of fact. However, were we ourselves to pass upon the weight of the evidence our conclusion would coincide with that of the trial court.

No error appearing, the judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.