[Nos. A030412, A031651. First Dist., Div. Five. Mar. 19, 1987.]

FRESNO POLICE OFFICERS ASSOCIATION et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

414

**COUNSEL**

Christopher D. Burdick, Philip M. Miller, Carroll, Burdick & McDonough, George W. Shaeffer, Jr., and Silver, Kreisler, Goldwasser & Shaeffer for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Mary C. Michel, Robert E. Murphy and C. Caren Dorshkind, Deputy Attorneys General, for Defendants and Respondents.

OPINION

HANING, J.—In this consolidated appeal plaintiffs/appellants Fresno Police Officers Association, Oakland Police Officers Association, the Organization of Deputy Sheriffs of San Mateo County, Bill Betzold, Robert Foster, and Frank Kastell appeal a judgment after court trial in favor of defendants/respondents State of California and State Controller Kenneth Cory in appellants' action for inverse condemnation. Appellants contend their employment agreements with their employing agencies constitute property interests which the state took or damaged without just compensation when it refused to pay interest on salary increases withheld pursuant to Government Code sections 16280 and 16280.5,[1] after those statutes were declared unconstitutional in *Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296 [152 Cal.Rptr. 903, 591 P.2d 1]. Appellants also contend the trial court abused its discretion in denying class certification.

Appellants are local public employee organizations and individual public employees whose employment agreements with their employing agencies entitled them to receive cost-of-living salary increases for the fiscal year 1978-1979. Following the passage of Proposition 13 (Cal. Const., art. XIII A [limiting the revenue local entities can raise through property taxes]) in June 1978, the Legislature enacted chapter 4 (§§ 16280-16285) of the Government Code, effective June 30, 1978. Chapter 4 authorized distribution of surplus funds in the state treasury to local governmental agencies "to alleviate the current fiscal crisis created by the passage of Proposition 13 . . . and to provide for maintaining essential services which would otherwise be lost." (§ 16281.) Section 16280 prohibited the distribution of state surplus to any local agency granting its employees a cost-of-living salary increase for 1978-1979 exceeding the cost-of-living increase provided for state employees. Section 16280.5 prohibited distribution of surplus funds to local agencies providing an increase in salary in 1978-1979 to elected or appointed non-civil service officers. Any agreement providing for a cost-of-living salary increase to local employees in excess of that granted state employees was declared null and void.

In February 1979 *Sonoma County Organization of Public Employees* v. *County of Sonoma, supra,* 23 Cal.3d at p. 321, held that sections 16280 and 16280.5 violated both the state (Cal. Const., art. I, § 9) and federal (U.S. Const., art. I, § 10) Constitutions as an impairment of the obligations of contract, and as violative of the home rule provision of article XI, sections 4 and 5 of the California Constitution.[2] The Supreme Court ordered the local

---

[1] Unless otherwise indicated, all further statutory references are to the Government Code.

[2] California Constitution, article XI, sections 4 and 5, grant charter counties and charter cities, respectively, plenary power to determine the amount of compensation of their officers and employees. (See, e.g., *Sonoma County Organization of Public Employees* v. *County of Sonoma, supra,* 23 Cal.3d at pp. 316-318 [152 Cal.Rptr. 903, 591 P.2d 1].) Appellants make no similar claim in the instant case concerning article XI.

entities to pay the salary increases withheld, but denied payment of interest on the ground that "[p]rejudgment interest is not allowed if the debtor 'is prevented by law ... from paying the debt.' (Civ. Code, § 3287.)" (*Id.,* at p. 321.)

Following the *Sonoma County* decision, appellants brought the instant action for inverse condemnation seeking interest on salary increases which were delayed until sections 16280 and 16280.5 were declared unconstitutional. They alleged, inter alia, (1) their right to a cost-of-living salary increase constituted a contract right, which is an interest in property which cannot be taken or damaged for public use by the state without just compensation; (2) the adoption of sections 16280 and 16280.5 constituted a taking or damaging of that property right within the meaning of California Constitution, article I, section 19 and the Fifth and Fourteenth Amendments of the United States Constitution; (3) the taking or damaging of the contract right was for a public use; (4) the taking or damaging of the contract right denied appellants the use and enjoyment of the withheld cost-of-living increases, which loss can be measured by the legal rate of interest on said sums. They also sought an accounting of the amount of unpaid wages and the legal rate of interest thereon for all local employees who had cost-of-living increases withheld pursuant to sections 16280 and 16280.5.

The parties stipulated that (1) appellants have been paid the amounts withheld under sections 16280 and 16280.5, and are now seeking payment for loss of use thereof; (2) it was the local public agencies, not respondents, which withheld the cost-of-living increases; (3) respondents did not have control over, receive nor retain any funds due appellants as salary increases; (4) but for the passage of sections 16280 and 16280.5 the local agencies would have paid appellants their contractual salary increases, but withheld them to avoid forfeiting state "bail-out" funds.

The trial court held that "the enactment of Government Code sections 16280 and 16280.5 did not constitute a taking or damaging of private property within the meaning of Article I section 19 of the California Constitution or of the Fifth and Fourteenth Amendments of the United States Constitution," and granted judgment in respondents' favor.

■ Inverse condemnation is a procedural device for "insuring that the constitutional proscription that '[p]rivate property shall not be taken or damaged for public use without just compensation having first been made to ... the owner ...' is not violated. [U.S. Const., 5th Amend.; Cal. Const., art. I, § 19.]" (*Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39, 43 [104 Cal.Rptr. 1, 500 P.2d 1345].) It " '... is the name generally ascribed to the

remedy which a property owner is permitted to prosecute to obtain the just compensation which the Constitution assures him when his property without prior payment therefor, has been taken or damaged for public use.' " (*Sheffet v. County of Los Angeles* (1970) 3 Cal.App.3d 720, 732 [84 Cal.Rptr. 11], citing with approval Van Alstyne, *Statutory Modification of Inverse Condemnation: The Scope of Legislative Power* (1967) 19 Stan.L.Rev. 727, 730.) ■ "In order to state a cause of action for inverse condemnation, there must be an invasion or an appropriation of some valuable property right which the [owner] possesses and the invasion or appropriation must directly and specially affect the [owner] to his injury." (*Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 119-120 [109 Cal.Rptr. 799, 514 P.2d 111].) Damages include compensation for the property taken or damaged and, if the owner has been deprived of possession before compensation is made, compensation for loss of use of the property. Normally the value of use is legal interest. (*City of San Rafael* v. *Wood* (1956) 144 Cal.App.2d 604, 607 [301 P.2d 421]; see 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 567, p. 3867.) An action lies for the taking of personal as well as real property. (*City of Oakland* v. *Oakland Raiders* (1982) 32 Cal.3d 60, 65 [183 Cal.Rptr. 673, 646 P.2d 835, 30 A.L.R.4th 1208]; *Sutfin* v. *State of California* (1968) 261 Cal.App.2d 50, 53 [67 Cal.Rptr. 665]; see also *County of San Diego* v. *Miller* (1975) 13 Cal.3d 684, 691 [119 Cal.Rptr. 491, 532 P.2d 139].)

However, appellants have cited no authority for the proposition that legislation enacted in violation of the state and federal constitutional prohibitions against impairment of contractual obligations give rise to an action for inverse condemnation. ■ As "a principle of law and a necessity of rational government[,] both constitutional and institutional understandings require that legislative acts, even if improper, find their judicial remedy in the undoing of the wrongful legislation, not in money damages awarded against the state." (*HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 519 [125 Cal.Rptr. 365, 542 P.2d 237].) "[I]nverse condemnation is an inappropriate and undesirable remedy in cases in which unconstitutional regulation is alleged." (*Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266, 275 [157 Cal.Rptr. 372, 598 P.2d 25].)

Appellants contend that the *HFH* and *Agins* decisions are limited to issues involving land use regulation, and are therefore inapplicable to the instant controversy. We disagree, concluding that the *HFH* and *Agins* principles have broader application. To conclude otherwise would lead to the serious impediment, if not prevention, of a broad spectrum of legislative action. We cannot impose liability on the state for fulfilling its basic task of governing. (See *HFH, Ltd.* v. *Superior Court, supra,* 15 Cal.3d at p. 519.)

In light of our disposition of the inverse condemnation issue, appellants' remaining contentions are moot.

Affirmed.

Low, P. J., and King, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 2, 1987.