HOMEWARD BOUND, INC., Appellant,

v.

ANCHORAGE SCHOOL DISTRICT and
Municipality of Anchorage, Appellees.

No. S-2880.

Supreme Court of Alaska.

April 27, 1990.

William M. Bankston and Paul D. Sey-
ferth, Bankston, McCollum & Fossey, An-
chorage, for appellant.

Howard S. Trickey and Toby N. Stein-
berger, Jermain, Dunnagan & Owens, P.C.,
Anchorage, for appellee Anchorage School
Dist.

James E. Ramsey, Deputy Mun. Atty.,
Scott A. Brandt-Erichsen, Asst. Mun.
Atty., and Richard D. Kibbey, Mun. Atty.,
Anchorage, for appellee Municipality of
Anchorage.

Before MATTHEWS, C.J., and
RABINOWITZ, BURKE, COMPTON, and
MOORE, JJ.

## OPINION

MOORE, Justice.

This appeal presents two questions. The first is whether the owner of land designated a school site by the Anchorage Municipal Assembly may compel the Anchorage School District to consummate the purchase. If not, the second question is whether the property owner may recover from the Municipality of Anchorage damages equal to the property's diminution in value resulting from the temporary designation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Homeward Bound owned a twenty-five acre parcel of land in east central Anchorage. Homeward Bound initially sought to rezone the property to permit a wider variety of land uses. When neighboring landowners objected, Homeward Bound decided to target the School Board and the Municipal Parks Department as potential purchasers. The Parks Department purchased 10 acres of land. In August 1985, Homeward Bound through its agent DOWL Engineers requested in writing that the Anchorage School District consider the remainder of its land as a possible elementary school site. Neighboring landowners agreed to support the school site acquisition campaign in exchange for Homeward Bound's agreement to postpone efforts to rezone the remaining property or to sell individual lots. Since that time, Homeward Bound has not actively pursued other development or sales opportunities.

In May 1986, the School District and the Municipal Planning Department issued a joint study of three proposed school sites, including that owned by Homeward Bound. The joint study recommended that the Anchorage Municipal Assembly designate one of the other two sites.

Following a public hearing in September, however, the Municipal Assembly passed a resolution selecting Homeward Bound's property for an elementary school site. Assembly Res. 86–192(S). The School Board did not purchase the property. A year later, the Municipal Assembly passed a second resolution authorizing the purchase. Assembly Res. 87–224(S). The School District again did not purchase the property, maintaining that it had no immediate need for a new school in east central Anchorage.

Homeward Bound sued the Municipality and the School District seeking either to force the School District to purchase its property or to recover damages equal to the diminution in value of its property since the September 1986 school site designation.

Homeward Bound moved for summary judgment against both defendants. The School District cross-moved for summary judgment, and the superior court entered judgment for the District. The Municipality moved to dismiss Homeward Bound's claims against it for failure to state a claim upon which relief can be granted. *See* Alaska R.Civ.P. 12(b)(6). The superior court granted the motion and entered judgment for the Municipality. Homeward Bound appeals.

## II. STANDARD OF REVIEW

Because the first amended complaint asserts identical claims for relief against the School District and the Municipality, the superior court effectively ruled that the claims against both entities could be disposed of under either Civil Rule 12(b)(6) or Civil Rule 56.

The superior court may enter summary judgment if the evidence in the record fails to present a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Alaska R.Civ.P. 56(c). The court must draw all reasonable inferences of fact against the moving party and in favor of the non-moving party. *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985). In contrast, the superior court may grant a Rule 12(b)(6) motion to dismiss for failure to state a claim only if the complaint sets forth no factual allegations supporting any enforceable cause of action. *Knight v. American Guard & Alert*, 714 P.2d 788, 791 (Alaska 1986).

If the parties present materials outside the pleadings, the court must state

affirmatively whether or not it considered the materials presented. *Reed v. Municipality of Anchorage,* 741 P.2d 1181, 1184 (Alaska 1987). If the court considers matters outside the pleadings, it must treat the motion to dismiss as a motion for summary judgment pursuant to Civil Rule 56. *Id.;* Alaska R.Civ.P. 12(b)(6). When the superior court does not state whether or not it excluded the evidence outside the pleadings, we may remand for proper consideration, review the decision as if the Rule 12(b)(6) motion was granted after exclusion of the outside materials, or review the decision as if the court granted a motion for summary judgment. *Reed,* 741 P.2d at 1184.

In this case, the superior court did not indicate whether or not it was considering evidence outside the pleadings. We elect to review the entire decision as if the court entered summary judgment for each defendant pursuant to Civil Rule 56.

### III. HOMEWARD BOUND CANNOT COMPEL THE SCHOOL DISTRICT TO CONSUMMATE THE SALE BECAUSE THE SCHOOL DISTRICT HAS DISCRETION WHETHER TO ACQUIRE PROPERTY SELECTED BY THE MUNICIPAL ASSEMBLY AS A POTENTIAL SCHOOL SITE

■ Homeward Bound argues that once the Municipal Assembly designates a school site, the School District must consummate the purchase within a reasonable period of time. The Municipality and the School District contend that the District has discretion whether or not to acquire Assembly-selected sites.

The scope of the School Board's authority is a question of statutory interpretation upon which we must exercise our independent judgment. *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 904 (Alaska 1987). We look first at the language of the state and local statutes construed in light of the purposes for which they were enacted. *Id.; Concerned Citizens v. Kenai Peninsula Borough,* 527 P.2d 447, 454 (Alaska 1974).

The relationship between the School District and the Municipal Assembly consists of a number of checks and balances. The School Board has primary management authority over the municipal school system.[1] Although the Assembly determines the total amount of the School District budget, it cannot make appropriations for specific items.[2] While the Assembly determines the location of school buildings and provides for construction and major rehabilitation and repair, AS 14.14.060(d), (f), the School Board establishes design criteria and is responsible for routine maintenance and custodial services, AS 14.14.060(e), (f).

In contrast, the Municipal Assembly has a much more direct interest in the acquisi-

---

1. AS 14.12.020(b) ("Each borough or city school district shall be operated on a district-wide basis under the management and control of a school board."); Anch.Mun. Charter § 6.03. Among other things, the School Board has the power to formulate policy, appoint and remove personnel, serve as a board of personnel appeals, and supervise the fiscal affairs of the district. Anch. Mun. Charter § 6.03.

2. Anch.Mun. Charter § 6.05(b) ("The Assembly may increase or decrease the budget of the School District only as to total amount."); *see also* AS 14.14.060(c). AS 14.14.060 provides in part:

(c) The borough school board shall submit the school budget for the following school year to the borough assembly by April 1 for approval of the total amount. Within 30 days after receipt of the budget the assembly shall determine the total amount of money to be made available from local sources for school purposes and shall furnish the school board with a statement of the sum to be made available....

(d) The borough assembly shall determine the location of school buildings with due consideration to the recommendations of the borough school board.

(e) The borough school board is responsible for the design criteria of school buildings.... The school board shall submit preliminary and subsequent designs for a school building to the assembly for approval or disapproval....

(f) The borough school board shall provide custodial services and routine maintenance for school buildings and shall appoint, compensate, and otherwise control personnel for these purposes. The borough assembly through the borough administrator, shall provide for all major rehabilitation, all construction and major repair of school buildings. The recommendations of the school board

tion of real property. All municipal land, including school sites,[3] is held in the name of the Municipality. AMC 25.10.040. The Municipal Assembly must approve all acquisitions of real property unless the purchase of a specific site was authorized in a capital improvement budget. AMC 25.20.020(A)(1). The Assembly must approve the commencement of eminent domain proceedings on behalf of the Municipality. AS 29.35.030; AMC 25.20.020(b). No contract for the acquisition of land is enforceable against the Municipality unless it complies with AMC 25.10.010–.080.[4]

In *Tunley v. Municipality of Anchorage School District*, 631 P.2d 67, 70 (Alaska 1981), parents of the school-age children sued to enjoin the School District from closing two elementary schools. The parents argued that the Municipal Assembly's statutory authority to "determine the location of schools" necessarily included the exclusive power to close schools. 631 P.2d at 74. We ruled that as between the School Board and the Municipal Assembly, the Board has ultimate authority to decide whether to close a school. 631 P.2d at 77. We reasoned that the School Board is an elected legislative body with legal responsibilities distinct from those exercised by the Assembly, particularly with respect to school system budgetary matters. 631 P.2d 75. While we recognized that AS 14.14.060(d) gives the Assembly a direct interest in the selection of new sites based on its power of eminent domain and its obligation to compensate the owners of condemned property, we concluded that AS

14.12.020(b) authorizes the School Board to make school closure decisions. 631 P.2d at 76–77.

We do not believe, that the Assembly's designation of land as a potential school site is sufficient to allow the owner of the land to force the School District to consummate the purchase. Because the School District budget is the source of money to purchase a school site, and the Assembly is unable to appropriate School District funds for specific items, and the School District has management authority over the budget as well as district operations, the Assembly may not force the District to spend money to acquire a particular site.[5] The Assembly's authority is limited to the decision which site, if any, may be acquired. All the hearings and recommendations by the Assembly and the School Board were preliminary and conditional. Homeward Bound has no right to compel a sale by virtue of the Assembly designation.

## IV. THE MUNICIPAL ASSEMBLY'S DESIGNATION OF HOMEWARD BOUND'S PROPERTY AS A POTENTIAL SCHOOL SITE DID NOT CONSTITUTE A COMPENSABLE TAKING

■ Homeward Bound argues in the alternative that the designation of its property as a potential school site is a taking for which Homeward Bound may recover just compensation under article I, section 18 of the Alaska Constitution. Specifically, Homeward Bound contends that it is enti-

---

shall be considered in carrying out of the provisions of this section.
Under AS 14.14.065, AS 14.14.060 also applies to the relationship between the Anchorage School District and the Anchorage Municipal Assembly. *Tunley v. Municipality of Anchorage School Dist.*, 631 P.2d 67, 74 & n. 14 (Alaska 1981).

3. Anch.Mun.Code ("AMC") 25.10.010 defines "municipal land" as "any real property owned by the Municipality of Anchorage, including real property to which the Anchorage School District has been granted management authority pursuant to section 25.10.050."

4. AMC 25.10.020(B). It provides: "No contract, lease or conveyance pertaining to the acquisition or disposal of real property by the munici-

pality may be enforced against the municipality, unless the contract, lease or conveyance was awarded, approved and executed in accordance with this title."

5. The requirement that the Assembly designate a school site serves two salutary purposes. First, it provides an early opportunity for Assembly participation in the site selection process. Second, the designation of a specific site in the School District's capital improvement budget obviates the need for subsequent Assembly approval of the acquisition under AMC 25.20.020(A)(1). Should the School Board reject a site approved by the Assembly, the Assembly may exercise the power of eminent domain to acquire the property for a public purpose pursuant to AS 29.35.030 and AMC 25.20.020(B).

tled to· recover damages for the diminution in valuè of its property while the designation was in effect. The School Board and the Assembly contend that the designation does not require the payment of just compensation as a matter of law.

"Private property shall not be taken or damaged for public use without just compensation." Alaska Const. art. I, § 18. Article I, section 18 is liberally construed in favor of the property owner. *Bakke v. State*, 744 P.2d 655, 657 (Alaska 1987). The requirement that the condemnor pay just compensation when property is damaged provides broader protection for private property rights than the fifth amendment to the United States Constitution. *Id.; State v. Doyle*, 735 P.2d 733, 736 (Alaska 1987).

■ Private property is taken or damaged for constitutional purposes if the government deprives the owner of the economic advantages of ownership.[6] Once private property is taken or damaged, the owner is entitled to be placed in the same position as he would have occupied absent the governmental interference. *Id.; see also State v. Doyle*, 735 P.2d 733, 735–36 (Alaska 1987) (awarding just compensation for loss of appreciation in value). It is irrelevant whether the taking was intentional or whether the government benefitted from it. *Bakke*, 744 P.2d at 657.

However, in cases such as this one where the alleged taking is based on precondemnation decisions concerning the subject property, the objective manifestations of the government's intention to take the property are critical to the decision whether there was a taking. This is because the government's indications of its intention to condemn the property are the source of the owner's claimed damages. In *Klopping v. City of Whittier*, 8 Cal.3d 39, 104 Cal.Rptr. 1, 500 P.2d 1345 (1972), the California Supreme Court held that when the government publicly expresses its intention to condemn property,

a condemnee must be provided with the opportunity to demonstrate that (1) the public authority acted improperly either by unreasonably delaying eminent domain action following an announcement of intent to condemn or by other unreasonable conduct prior to condemnation; and (2) as a result of such action the property in question suffered a diminution in market value.

104 Cal.Rptr. at 11, 500 P.2d at 1355. Later, in *Selby Realty Co. v. City of San Buenaventura*, 10 Cal.3d 110, 109 Cal. Rptr. 799, 514 P.2d 111 (1973) the court held that the mere enactment of a general plan showing proposed streets extending through private property did not constitute a taking because there was "no present concrete indication that the county either intends to use plaintiff's property for the proposed streets or that it intends to acquire the property by condemnation."[7] The court distinguished *Klopping* on the ground that "the adoption of a general plan is several leagues short of a firm declaration of an intention to condemn property." 109 Cal.Rptr. at 806, 514 P.2d at 117.

Here, the Assembly's designation of Homeward Bound's property as a potential school site did not amount to a concrete indication that it intended to condemn the property. Whether the Municipality would condemn the property depended entirely on the decision of an independent agency, the School District. The District never indicated that it intended to choose Homeward Bound's property to build its school. In fact, in its joint study with the Municipal Planning Department of three proposed school sites, the School District recommended that the Assembly designate a different site. Since the district indicated that

---

**6.** The economic advantages incident to the ownership of unimproved property are the potential for appreciation and the opportunity for development. *Stewart & Grindle, Inc. v. State*, 524 P.2d 1242, 1247 (Alaska 1974).

**7.** 109 Cal.Rptr. at 805, 514 P.2d at 116. The court also held that the plaintiff failed to state a

justiciable claim for declaratory relief on the ground that he has "no greater right to secure a declaration as to the validity of the plan or its effect upon his land than that available to any other citizen whose property is included within the plan." 109 Cal.Rptr. at 798, 514 P.2d at 115.

it did not intend to choose Homeward Bound's property to build its school, the Assembly's mere designation of the property as a school site was not a concrete indication that the Municipality intended to condemn the property.

The decision of the superior court is AFFIRMED.